UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
CIVIL DIVISION

------------------------------

DAVID GROSSMAN & ASSOCIATES PLLC, and DANK CAPITAL SAPI DE CV.

                Plaintiffs

   -v-

KERNAN AND ASSOCIATES LAW GROUP,

                Defendant

------------------------------

AMENDED COMPLAINT ALLEGING BREACH OF CONTRACT

(28 U.S.C. § 1332; Diversity of Citizenship)

2:23-cv-08231-NJC-LGD assigned

JURY TRIAL REQUESTED

The action, seeks damages for *inter alia* a claimed breach of contract and respectfully alleges that at all times hereinafter mention as follows:

The Parties:

1. Plaintiff **DANK CAPITAL SAPI DE CV.** is a foreign company with,

    address: Carratera Transpensiular KM 19.5 23405 BCS Mexico;

    telephone: +526241351102;

    email: eojeda@dank.capital;

    (hereafter 'DANK).

2. Plaintiff **DAVID GROSSMAN & ASSOCIATES PLLC**, is located at

    address: 1248 Montauk Highway West Islip NY 11795;

    telephone: 631-864-5575;

    email: dgrossmanesq2000@gmail.com;

    (hereafter 'DGA').

3. Defendant **KERNAN AND ASSOCIATES LAW GROUP** is owned by

    Patrick B Kernan Esq, sole proprietor of the business located at,

    address: 1629 K street NW, Ste 300, Washington DC 20006

telephone: (202) 759-9912

email: pkernan@kernanandassociateslawgroup.com;

(hereafter 'Defendant').

Basis for Jurisdiction

4. Plaintiff **DANK CAPITAL SAPI DE CV.** is a foreign company formed under the laws of Mexico and has its principal place of business in Mexico.

5. Plaintiff **DAVID GROSSMAN & ASSOCIATES PLLC**, is formed under the laws of the State of New York and has its principal place of business in New York State.

6. Defendant **KERNAN AND ASSOCIATES LAW GROUP** is formed under the laws of Washington DC and has its principal place of business in Washington DC.

Amount Of Controversy

7. The amount at stake far exceeds $75,000. In the instant action as will be detailed below there was a minimum purchase of approximately $18.5 million United States Dollars which the Defendant has breached. There is currently a disputed $4.5 million USD in IOLTA account of Plaintiff DGA which this Court separately will be asked to allocate as part of these proceedings. As such the amount in controversy is well in excess of the required minimum.

Statement of Claims

8. DANK as a seller engaged DGA to act as escrow agent for a contemplated purchase of 250 bitcoins ('BTC').

9. Notably each BTC is valued at approximately $37,000, subject to market fluctuation, as of today. The cost of Bitcoins increases significantly daily and Dank is being increasingly damaged as a result.

10. The 'buyer' was represented by Defendant to be a third-party but this turned

out to be false and misleading. The buyer Defendant identified was in fact not the real buyer which was a material misrepresentation.

11. Plaintiffs requested a 'KYC' for the 'buyer' which was provided before funds were delivered. Later it was discovered this was not the 'buyer'. The true buyer remains unknown.

12. Defendant presented himself solely as a co-escrow agent in a written agreement when in fact he was the true buyer, or at a minimum the agent for the real and actual buyer who remains unknown but apparently wanted by the Secret Service.

13. The Defendant provided Plaintiffs with details about a purported buyer affiliated with a company identified as PT. GPH INDONESIA KAPITAL. The client, identified as MOHAMMAD AKRAM BIN GHOWS MOHD, allegedly hails from Singapore and holds passport number K2038280N. Subsequently, it was revealed that this information was entirely inaccurate. The truth is that, the defendant met with the actual buyer, an individual known as Sam, in Washington. During this meeting, the defendant received funds from Sam and purportedly exchanged them for BTC using his escrow Kraken wallet.

14. Following the aforementioned meeting, the individual known as Sam deposited $7.6 million USD into the defendant's escrow account at Bank of America, as indicated in the table below. Subsequently, the defendant wired out $943K USD to Sam. Immediately thereafter, they commenced negotiations with the plaintiffs to initiate transactions with a commitment to do $15 million in business.

15. This was agreed to between the parties and confirmed when Defendant presented the following graphic summary re-confirmation:

| | | | | | |
|---|---|---|---|---|---|
| | Deposit | $ 7,600,107.00 | | | |
| | $ 943,347.00 | | paid | paid | |
| | $ 2,218,920.00 | | paid | ฿ 63.550 | |
| $ 4,437,840.00 | $ 2,218,920.00 | | paid | ฿ 63.550 | |
| | $ 2,218,920.00 | | to be paid | ฿ 63.550 | |
| | Deposit | $ 7,600,107.00 | | | ฿ 190.650 |
| | $ 7,600,107.00 | | to be paid | ฿ 217.668 | |
| | | | | | ฿ 217.668 |

16. The Defendant received the first agreed-upon BTC delivery, carried out through the first wire transfer, punctually and in the specified manner.

17. Subsequently, the second and third deposits were executed by the Defendant to the Plaintiffs.

18. A commitment was made that upon the provision of these BTC units, a deposit of 1.7 million would follow to finalize the first purchase of 250 BTC. Furthermore, an assurance was given that a 4th additional deposit of 7.6 million was to be made, and beyond that, an additional 35 million as confirmed by text.

19. As shown in this shared text between Defendant and his 'client', which later we learned was between Defendant and his exit customer 'Sam' which was forwarded to the Plaintiffs:



20. The net effect is that Defendant is the de facto buyer in the subject transaction and has his own exit customers behind him which are not the concern of Plaintiffs.

21. Defendant provided his purchase plan as part of the agreement between the parties to this action which further, made commitments to Dank to purchase the whole sum, and then confirmed the agreements in place between the parties in this spreadsheet he prepared:

| Wallet Balance | Test Type | Buyer code | Country | Satoshi Receiving Wallet | PAYMENT | AMOUNT | Payment Form |
|---|---|---|---|---|---|---|---|
| ₿ 5,000 | direct | SWISS1 | SWISS | | DIRECT TO SELLER | $ 150,000,000.00 | FIAT |
| | A to B | GERMAN1 | DE | | Payment via Escrow | $ 150,000,000.00 | FIAT |
| | A to B | PANAM1 | PA | | Payment via Escrow | $ 70,000,000.00 | USDT |
| | A to B | LELEY1 | US | | Payment via Escrow | $ 150,000,000.00 | FIAT |
| ₿ 250 | Direct | LISA1 | US | | DIRECT TO SELLER | $ 7,800,000.00 | |
| FOR EXECUTING THIS PLAN, WE NEED 2 SATOSHIS | | | | | DIRECT PAYMENTS | $ 157,800,000.00 | |
| | | | | | FUNDS IN ESCROW | $ 370,000,000.00 | |

22. Defendant as such was the 'buyer' for purposes of this transaction and assumed the responsibility in writing to complete the tranches.

23. Plaintiffs detrimentally relied upon the commitments and representations of Defendant.

24. The total purchase was to be at a discounted price and to secure this required a minimum total transaction of 250 BTC. The parties agreed it would occur in two tranches.

25. The first purchase funds were deposited in the IOLTA of DGA and the first BTC was delivered to Defendant for a first tranche. The first tranche Defendant funded with money obtained from one of its exit buyers named 'Sam', which was later disclosed. This was contrary to the information provided before the transaction.

26. The identity of the buyer and certainty of the fact funds are non-criminal and free/clear are crucial to any seller and Defendant made multiple misrepresentations.

27. Each time Defendant delivered funds he certified and confirmed the funds were clean, free and of non-criminal origin.

28. The overall tranches, both completed and to be completed, are summarized in this graphic which confirms the transaction was for 250 coins:

| | | | | | |
|---|---|---|---|---|---|
| 1st Transfer | | 33.00% | $ 2,218,920 | | |
| Main Quantity Wallet | | | ฿ 65.4549 | | Price ref/BTC |
| Buyer Net 1 Discount wallet | | | ฿ 2.62 | | $ 33,900.00 |
| Buyer Side Fees wallet | | | ฿ 0.65 | | |
| 2nd Transfer | | 33.00% | $ 2,218,920 | | |
| Main Quantity Wallet | | | ฿ 65.4549 | | ฿ 198.3481 |
| Buyer Net 1 Discount wallet | | | ฿ 2.62 | | ฿ 7.9339 |
| Buyer Side Fees wallet | | | ฿ 0.65 | | ฿ 1.9835 |
| 3rd Transfer | | 34.00% | $ 2,286,160 | | |
| Main Quantity Wallet | | | ฿ 67.4383 | | |
| Buyer Net 1 Discount wallet | | | ฿ 2.70 | | |
| Buyer Side Fees wallet | | | ฿ 0.67 | | ฿ 248.4956 |
| | | | | | |
| 4th Transfer | | | $ 1,700,000 | | |
| Main Quantity Wallet | | 100.00% | ฿ 50.1475 | | ฿ 50.1475 |
| Buyer Net 1 Discount wallet | | 4.00% | ฿ 2.01 | | ฿ 2.0059 |
| Buyer Side Fees wallet | | 1.00% | ฿ 0.50 | | ฿ 0.5015 |
| | | | | | |
| Wallets as in the Escrow Agreement | | | | | |
| Main Quantity Wallet | | 3LZs9qk7XfX9Jifkc78LDa1GCNVMkb1zKG | | | |
| Buyer Net 1 Discount | | 3DkaQ8rQwgoMWctQ37iy4BLmkEz6zoJPD7 | | | |
| Buyer Side Fees | | 3QzMDeaLgEy21bqH4PJrFKe3R5MhLESajY | | | |

29. Indeed the first tranche was completed and approximately 66 coins and delivered valued at $2,218,920.

30. Next the second and third deposit was funded by Defendant into DGA's IOLTA at Bank of America in the amount of $4,505,080.

31. Sending only $4.5 million rather than the full amount required for the balance of the 250 BTC was a breach of the agreement in and of itself.

32. These circumstances have resulted in significant financial losses for Plaintiffs. To execute our tasks accurately, punctually, and within the specified budget, it is imperative for us to secure the required amount of BTC in advance to fulfill

the terms of the contract.

33. To obtain the necessary discount, it is required to commit to a certain volume of purchase, and this requires us to secure the quantity of BTC agreed upon. We must also accept a performance penalty, as mutually determined, in the event that we fail to fulfill our obligation. This penalty could amount to as much as 50% of the total value of the BTC. Regrettably, we find ourselves in default with our supplier at this time.

34. The transaction was then halted by the United States Secret Service through no fault of Plaintiffs when the DGA IOLTA account was restrained.

35. Upon Information and belief this was done because HSBC claimed funds were stolen from HSBC somehow and at some unknown time.

36. The history of the HSBC funds is unknown to Plaintiffs.

37. The buyer in the transaction at bar has not paid for the required minimum of 250 coins and is therefore in breach of contract. The contract was initially intended to be valued in the hundreds of millions.

38. Plaintiffs demand judgment in the amount of the value of 250 BTC which is approximately $18,500,000 USD for **breach of contract** damages using today's price. And it's important to note that this was merely a test trial.

39. It was multiple times Defendant certified and affirmed under penalty of perjury the purchase funds were free, clear and non-criminal and this was not true.

40. Plaintiffs detrimentally relied upon the representations of Defendant.

41. Defendant owed a professional duty to Plaintiffs as an attorney and co-escrow which Defendant breached which constitutes malpractice.

42. Plaintiffs assert a **second cause of action** for Escrow Agent and Legal Malpractice.

Certification and Closing

43. Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

WHEREFORE, Plaintiff request damages, attorneys fees, costs and such other relief this Court deems just and proper.

Dated: West Islip, New York
November 12, 2023

_____
David Grossman Esq (NY2693919)
Kelly Grossman & Kerrigan PLLC For Plaintiff
1248 Montauk Highway West Islip
NY 11795 T 631-864-5585
C 631-459-9241
E dgrossman@kgkfirm.com