**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| DAVID GROSSMAN & ASSOCIATES PLLC, AND DANK CAPITAL SAPI DE CV. | ) ) ) | |
| | ) | |
| *Plaintiffs* | ) ) | |
| v. | ) | Civil Case Number: 23-CV-08231-NJC-LGD |
| | ) | |
| KERNAN AND ASSOCIATES LAW GROUP | ) ) | NOTICE OF MOTION |
| | ) | |
| Defendant | ) | |

**NOTICE OF MOTION**

PLEASE TAKE NOTICE that upon the annexed brief, dated the 15th day of December 2023, and upon all papers filed herein, a motion will be made by the Defendants to this Court, the Honorable Nusrat Jahan Choudhury presiding, at location and date set by this Court or as soon thereafter as counsel can be heard, for a judgment pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, dismissing the Complaint, and denying the request for a Temporary Restraining Order, and for such other and further relief as this Court may deem just and proper.

PLEASE TAKE FURTHER NOTICE that in the event this motion is denied, it is requested that this Court permit the Defendants, in accordance with Rule 12(a)(4) of the Federal Rules of Civil Procedure, to interpose an answer within twenty-one (21) days after notice of this Court's decision.

Dated: December 15, 2023                    Respectfully submitted,

_____
Patrick B. Kernan, Esq.
Kernan and Associates Law Group, PLLC
1629 K Street NW, Suite 300
Washington, DC 20006
Email:
pkernan@kernanandassociateslawgroup.com
Phone cell: (703) 867-2973

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| DAVID GROSSMAN & ASSOCIATES PLLC, AND DANK CAPITAL SAPI DE CV. | ) ) ) | |
| | ) | |
| *Plaintiffs* | ) ) | |
| v. | ) | Civil Case Number: 23-CV-08231-NJC-LGD |
| | ) | |
| KERNAN AND ASSOCIATES LAW GROUP | ) ) | MEMORANDUM OF LAW IN SUPPORT OF |
| | ) | MOTION TO DISMISS |
| Defendant | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT'S MOTION TO DISMISS**

## PRELIMINARY STATEMENT

Defendant, Kernan and Associates Law Group, ("KALG") submits this memorandum of law in support of its motion for an Order, pursuant to Fed. R. Civ. P. 12(b)(6), dismissing Plaintiffs' complaint (the "Complaint") in its entirety.  As more fully stated below, the entire Complaint should be dismissed. Moreover, the request for a temporary restraining order should be similarly dismissed.

Defendant, and all Parties to the transaction, were the victim of a sophisticated phishing fraud scheme perpetrated against the real funds' owner. The perpetrators were able to send corporate documents with corporate stamps and passports to validate authority to transact with the funds. The perpetrators were able to set up almost identical email addresses to the corporation to correspond regarding the transaction. The perpetrators were able to send an unauthorized wire from a corporate bank account overseas to the Kernan and Associates escrow account without the company, HSBC, Bank of America, or the Federal Reserve Wire Clearing Service, learning of the theft until eight (8) days later. The United States Secret Service ("USSS") is investigating the circumstances and intends to obtain an order from a court to seize the funds so that they can be returned to the corporate victim from which the funds were allegedly stolen. This Court should dismiss the request for Temporary Restraining Order, and the Complaint, and allow the USSS to continue to perform its work without interference.

Plaintiffs allege that Plaintiffs and Defendant entered into a contract for the purchase of bitcoin whereby Defendant was the buyer of the bitcoin. Plaintiffs' fail to plead the elements necessary to establish such a Contract. Moreover, Plaintiffs provide no such Contract. The Plaintiffs fail to state where the terms of the contract were documented. Plaintiffs and Defendant have never discussed the terms of this transaction verbally or in writing. Defendant and David Grossman did in fact enter into a written escrow agreement whereby David Grossman was to

hold funds in trust on behalf of Defendant and his client. This escrow agreement is the only Contract between the Parties. It clearly establishes Defendant as a joint escrow attorney with David Grossman for the transaction. Rather than fulfill the escrow obligations by allowing the funds to be redistributed to the rightful owner, Defendants seek to send **$4,505,080.00** to Dank Capital in exchange for nothing, other than vague allegations of damages that are not specified in the Complaint.

Assuming there was some sort of contract created between the Parties outside of the escrow agreement, performance was excused because there is no dispute it was illegal, impossible, or impractical to perform. The funds provided by the buyer's investor appear to have been stolen in a sophisticated fraud scheme. Therefore, the USSS is attempting to return the funds to the rightful owner. The funds were frozen by the USSS and Bank of America. As a result, there are no funds available to be used for the transaction. Fulfilling the contract, if the Court finds one existed, was illegal, impossible, or commercially impractical. Moreover, assuming arguendo, this Court finds there was a Contract between the Parties whereby Defendant was a buyer of bitcoin, Plaintiffs' breached the contract first by failing to fulfill an express term of the contract, to deliver bitcoin immediately or within thirty (30) minutes of the funds being sent by Defendant.

Finally, the request for temporary restraining order should be denied for several reasons. First, Plaintiffs cannot demonstrate the likelihood of success on the merits as shown in the other arguments set out in this motion. Second, Plaintiffs cannot show irreparable harm. This is a money damage case and recouping money does not provide a basis for a temporary restraining order. Even if Plaintiffs are successful, the Court has the ability to place Plaintiffs in the position they would have been otherwise if money damages is the only remedy sought. Finally, Plaintiffs have failed to join necessary parties. Plaintiffs have not served the federal government. The federal government through the USSS is trying to seize and return the funds to its rightful owner.

3

The federal government must be joined in this action so they can assert the government's interest in returning the funds to the rightful owner. Plaintiffs refer to the United States Attorney's Office in their notice to show cause, but there is no evidence the government was ever properly served in this matter.

## ARGUMENT

### Standard of Review

In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This standard does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

In adjudicating a Rule 12(b)(6) motion, the Court is entitled to consider: "(1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *In re Merrill Lynch & Co.*, 273 F. Supp. 2d 351, 356-57 (S.D.N.Y. 2003) (internal citations omitted), *aff'd in part and reversed in part on other grounds sub nom.*

*Lentell v. Merrill Lynch & Co.*, 396 F.3d 161 (2d Cir. 2005); *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("[T]he district court . . . could have viewed [the documents] on the motion to dismiss because there was undisputed notice to plaintiffs of their contents and they were integral to plaintiffs' claim.").

**Point I**

**THE PLAINTIFFS FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AGAINST DEFENDANT BECAUSE THEY FAIL TO PROPERLY ALLEGE THE ELEMENTS OF A BREACH OF CONTRACT**

As a general matter, to allege a breach of contract, a plaintiff must plead (and prove) the following: (1) the existence of an enforceable agreement; (2) performance by plaintiff; (3) the defendant breached the agreement; and, (4) the plaintiff sustained damages as a direct result of the defendant's breach. *JP Morgan Chase v. J.H. Elec. of N.Y., Inc.*, 69 A.D.3d 802, 803 (2d Dept. 2010). The failure to satisfy each of the foregoing elements is fatal to a breach of contract claim.

First, Plaintiffs fail to establish the existence of an enforceable agreement. A plaintiff must identify the specific terms of the agreement upon which the claim is based. *M&T Bank Corp. v. Gemstone CDO VII, Ltd.*, 68 A.D.3d 1747, 1750-51 (4th Dept. 2009); see CPLR 3211 [a] [7]. After all, if the plaintiff cannot identify the terms of the agreement alleged to have been breached, s/he cannot prove that the defendant breached the agreement. In claiming a breach of contract (i.e., enforcing or attempting to enforce a contract), the first step for the plaintiff is to plead the existence of a valid contract. In that regard, the plaintiff must identify the specific terms of the contract that the defendant is alleged to have breached. General allegations that the contract has been breached will not suffice. *Kraus v. Visa Int'l Service Assoc.*, 304 A.D.2d 408 (1st Dept. 2003).

Although it is not necessary for each element to be pleaded individually, a claim that fails to allege facts sufficient to show that an enforceable contract existed between the parties is

subject to dismissal." *Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 202 (S.D.N.Y. 2008). "The fundamental basis of a valid, enforceable contract is a meeting of the minds of the parties, and, if there is no meeting of the minds on all essential terms, there is no contract." *Benicorp Ins. Co. v. Nat'l Med. Health Card Sys.*, 447 F. Supp. 2d 329, 337 (S.D.N.Y. 2006) (citation omitted). Accordingly, "[t]he existence of the agreement is dependent upon allegations demonstrating, inter alia, the parties' mutual assent to the terms of the agreement." *CAC Grp., Inc. v. Maxim Grp., LLC*, No. 12 Civ. 5901(KBF), 2012 U.S. Dist. LEXIS 148062, 2012 WL 4857518, at *3 (S.D.N.Y. Oct. 10, 2012).

In *Barrett v. Grenda*, 2017 NY Slip Op. 07031 (4th Dept. Oct. 6, 2017), Barrett commenced her action against the defendants for conduct relating to her investment in a private fund established by Walter Grenda, Timothy Dembski, and Reliance Financial Advisors, LLC (collectively, the "Reliance Defendants") and TD Ameritrade. Barrett sought damages as a result of the defendants' breach of contract.

Barrett's claims arose from investments made in April 2011 in the Prestige Wealth Management Fund (the "Prestige Fund"), a fund that was established by the Reliance Defendants in November 2010. Barrett made her investment in the Prestige Fund through TD Ameritrade, and claimed, among other things, that TD Ameritrade breached its agreement (an IRA Application and Client Agreement) with her by failing to supervise the Reliance Financial Defendants.

TD Ameritrade moved to dismiss. Regarding the contract claim, TD Ameritrade argued that Barrett failed to plead the formation of a contract from which a breach could arise – that is, she failed to identify any of the terms of the agreement claimed to have been breached: "Plaintiff has failed to state a claim for breach of contract, because Plaintiff has failed to identify any provision in any contract between her and TD Ameritrade by which it agreed 'to provide prudent professional financial advice,' or to 'supervise' her account or her investment advisors."

6

Concluding that the motion was "premature" in the absence of discovery, the motion court denied it without reviewing TD Ameritrade's substantive contentions. The Fourth Department reversed, concluding that the motion court erred in denying the motion. In doing so, the Court agreed with TD Ameritrade, finding that Barrett "failed to identify the particular contractual provision that was breached."

With respect to the case at hand, there is a clear and complete contract in this matter which is the escrow agreement between the Parties. The Plaintiff seeks to go beyond this document and make Defendant, the escrow attorney, a "buyer" of bitcoin. Plaintiffs cite no correspondence between the Parties that would set the terms and conditions for any contract. Defendant has never even communicated orally or in writing with Plaintiffs about this transaction. The Plaintiffs submit a snippet from a spreadsheet into the Complaint that has calculations that Defendant has never seen, never mind affirm. There is nothing else that was submitted that establishes the minimum terms and conditions of a contract. Plaintiffs have "not shown which provision of the Agreement was breached by [Defendant] and the [Defendant] cannot be liable for breach of an agreement which they did not sign and to which they were not a party. *Black Car & Livery Ins., Inc. v H & W Brokerage, Inc.*, 28 AD3d 595, 595 [2nd Dept 2006]; *La Barte v Seneca Resources Corp.*, 285 AD2d 974, 975 [4th Dept 2001].

Plaintiffs' attempt to submit a "Wallet Identification" document to try and impose greater obligations that Defendant must fulfill is erroneous. First, this wallet identification document submitted by Defendants is not a true and accurate copy of the document. The document signed by the Parties on DocuSign, attached to Defendant's Declaration, did and does not, contain the title "Invoice." That title was added by someone at a later date after signatures. Moreover, the Wallet Identification document was merely to document where bitcoin should be sent because sending bitcoin to cryptocurrency wallets is risky. If bitcoin is sent to an erroneous address there is no way to retrieve it and it could be lost forever. Moreover, there is frequent fraud with

7

malevolent individuals substituting fake wallet addresses. The wallet identification document confirms the cryptocurrency receiving wallets. The document in no way indicates Defendant is a buyer of bitcoin. It just documents how the escrow agents will proceed with the transaction and where bitcoin will be sent.

For the foregoing reasons, Plaintiffs fail to allege a viable Contract that was breached. Defendant was an escrow attorney in the transaction and nothing more. Defendant entered into no contract with Plaintiffs that could, or was, breached. Accordingly, Plaintiffs Complaint should be dismissed.

## Point II

**THE DOCUMENTARY EVIDENCE, INCLUDING THE EXECUTED ESCROW AGREEMENT BETWEEN THE PARTIES, REFUTES PLAINTIFFS' ALLEGATIONS THAT DEFENDANT OWED PLAINTIFFS ANY CONTRACTUAL OBLIGATIONS TO PURCHASE BITCOIN.**

Plaintiffs' theory that a contract for the purchase of bitcoin was created between Plaintiffs and Defendant, with Defendant as the buyer, is directly refuted by the fully executed escrow agreement between the Parties. The escrow agreement clearly indicates Defendant is acting as escrow agent for the buyer and is not the buyer of the bitcoin. Moreover, even if there were reliable documents showing a further obligation by Defendant, which there is not, the parol evidence rule, precludes a party from introducing extrinsic evidence to add to or vary a complete written contract.

In *Barrett v. Grenda*, 2017 NY Slip Op. 07031 (4th Dept. Oct. 6, 2017), the Court held that "the documentary evidence submitted by the TD Ameritrade defendants, i.e., the IRA Application and Client Agreement, conclusively refutes plaintiff's allegation that the TD Ameritrade defendants owed any such contractual obligations to her." Moreover, similarly stated in the *Sheriff's Silver Star Assn., Inc.* case, none of the contractual obligations alleged by Plaintiffs are set forth in the escrow agreement. The *Sheriff's Silver Star Assn., Inc* court stated:

We conclude that defendant established its entitlement to dismissal of the causes of action for breach of contract based on a defense founded upon documentary evidence (see CPLR 3211 [a] [1]). None of the contractual obligations alleged by plaintiffs is set forth in the CBA, the only contractual document in the record, and thus any cause of action for breach of contract is refuted by documentary evidence, namely, the CBA. In addition, "[b]y its own terms, the [CBA] conclusively establishe[s] that plaintiff[s] . . . failed to state a cause of action for breach of contract" (Talansky v American Jewish Historical Socy., 8 AD3d 150, 150 [2004]; see CPLR 3211 [a] [7]; Gill v Bowne Global Solutions, Inc., 8 AD3d 339, 340 [2004]; Cuomo v Mahopac Natl. Bank, 5 AD3d 621, 622 [2004], lv denied 3 NY3d 607 [2004]). Moreover, plaintiffs' allegation of an oral or tacit agreement by defendant is barred by the parol evidence rule, which precludes a party from introducing extrinsic evidence to add to or vary a complete written contract (see W.W.W. Assoc. v Giancontieri, 77 NY2d 157, 162 [1990]; Marine Midland Bank-S. v Thurlow, 53 NY2d 381, 387 [1981]).

*Sheriff's Silver Star Assn., Inc. v County of Oswego,* 27 AD3d 1104, 1105-1106 [2006], lv denied 7 NY3d 712 [2006].

**Point III**

**PLAINTIFFS COMPLAINT SHOULD BE DISMISSED BECAUSE IT DOES NOT FULFILL THE REQUIREMENTS OF THE NEW YORK STATUTE OF FRAUDS**

Plaintiffs' theory that a contract for the purchase of bitcoin was created between Plaintiffs and Defendant fails to fulfill the requirements of the statute of frauds and Plaintiffs' Complaint should be dismissed. The Plaintiffs and Defendant had an executed escrow agreement and there was no agreement creating further obligations by Defendant that fulfills the requirements of the statute of frauds. New York's statute of frauds, codified in General Obligations Law §§ 5-701 through 5-705, requires a signed writing for certain types of agreements. N.Y. GEN. OBLIG. LAW §§ 5-701(a)(1), 5-701(10), 5-703(1) (McKinney 2012). New York General Obligations Law § 5-701, requires a contract involving the sale of goods for $500 or more to be in writing.

To satisfy the statute of frauds, these types of contracts must be reduced to a writing that identifies the parties, describes the subject matter, states all the essential terms of the agreement, and is signed by the party to be charged. *Urgo v. Patel,* 297 A.D.2d 376, 377, 746 N.Y.S.2d 733, 735 (2d Dep't 2002) (*citing 160 Chambers St. Realty Corp. v. Register of N.Y.C.,* 226 A.D.2d 606, 606–07, 641 N.Y.S.2d 351, 352 (2d Dep't 1996).

In *C. D & S Restoration, Inc. v. Wenger Const.* Co., 54 Misc. 3d 763, 39 N.Y.S.3d 911 (Sup. Ct. Nassau Cty. Oct. 27, 2016), the Supreme Court, Nassau County considered a subcontractor's breach of contract action against a contractor with respect to a contract to perform construction on a public school. As alleged in the complaint, the "defendant entered into a contract with the New York City School Construction Authority" (SCA) in January 2011 to perform a construction project at a public school in Staten Island. *Id*. at 765, 39 N.Y.S.3d at 913 A couple of months later, the parties entered into a subcontract, under which the "plaintiff was to perform asbestos abatement work in connection with the project . . . ." *Id*. The court concluded that the "plaintiff's argument that the emails between the parties on or about March 25, 2014 constitute a separate agreement which is not subject to the terms of the subcontract is fatally defective." "It is this court's opinion that credit negotiations between the parties and between [the] defendant and the SCA were part of, contemplated within (i.e. para 5 [sic]), and subject to the terms of the subcontract." Accordingly, the court dismissed the plaintiff's complaint in its entirety. *D & S Restoration, Inc.*, 54 Misc. 3d at 769, 39 N.Y.S.3d at 915.

Plaintiffs' Complaint attempts to create a contract between Plaintiffs and Defendant for the purchase of bitcoin out of whole cloth. There is nothing provided by Plaintiffs that creates a contract that fulfills the statute of frauds requirement of a document that identifies all the terms of the contract and signed by the Parties. Plaintiffs place a snippet of a spreadsheet that details commissions into the Complaint. This does not contain terms of a contract and it was not signed by the Parties. In fact, Defendant has never seen this spreadsheet before. Plaintiffs seek to turn a wallet identification document into an invoice to create more confusion. But even this document undermines Plaintiffs contract theory because it identifies Defendant as an escrow attorney not a buyer.  Moreover, the actual document that was executed by the Parties does not contain the title "invoice."  That title was added by someone at a later date. The document is merely a wallet identification document that shows where the bitcoin will be sent once purchased.

10

**Point IV**

**ASSUMING, ARGUENDO, THAT THIS COURT FINDS A CONTRACT WAS FORMED BETWEEN PLAINTIFFS AND DEFENDANT, AS THE DEFENDANT A BUYER OF BITCOIN, PERFORMANCE BY DEFENDANT WAS ILLEGAL, IMPOSSIBLE OR COMMERCIALLY IMPRACTICAL AND PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED.**

Assuming, arguendo, this Court holds that there is a contract for the purchase of bitcoin between the Defendant and the Plaintiffs, with the Defendant as the buyer, performance by Defendant was excused by illegality, impossibility, or commercial impracticability. "When performance depends on the continued existence of a given person or thing, and such continued existence was assumed as the basis of the agreement, the death of the person or the destruction of the thing puts an end to the obligation." *East River Sav. Bank v. Secretary of Housing & Urban Dev.*, 702 F. Supp. 448, 460-461 (S.D.N.Y. 1988). New York law imposes various limitations on the applicability of the impossibility defense. The defense is available when the impossibility was produced by an unanticipated event that could not have been foreseen or guarded against in the contract. *Id.*

The First Appellate Division of New York previously found that performance of music recording and management contracts was objectively impossible after a court ordered that the parties could not have any contact with each other. *Kolodin v. Valenti*, 115 A.D.3d 197, 200 (N.Y. App. Div. 1st Dep't 2014). There, the means of performance was made impossible by operation of law—the court's order that the parties cease contact. Likewise, government action can render performance impossible. *See A & S Transp. Co.*, 546 N.Y.S.2d at 111–12.

As with impossibility, the doctrine of commercial impracticability may also be available where performance is rendered impracticable.  Where "performance is made impracticable without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made. *See* N.Y. U.C.C. §2-615.

Assuming this Court finds there was some sort of contract created between the Parties

outside of the escrow agreement, performance was excused because there is no dispute it was illegal, impossible, or impractical to perform. The funds provided by the buyer's investor appear to have been stolen in a sophisticated fraud scheme. Therefore, the USSS is attempting to return the funds to the rightful owner. The USSS, in coordination with Bank of America, first froze the funds so that they could not be utilized for the transaction. The USSS is in the process of seizing the funds so that they can be returned to their rightful owner. There are no funds available to be used for the transaction as a result of rightful intervention of the federal government and the bank that holds the funds. As a result, fulfilling the contract, if the Court finds one existed, was illegal, impossible, or commercially impractical. Accordingly, Plaintiffs Complaint should be dismissed.

**Point V**

**ASSUMING, ARGUENDO, THAT THIS COURT FINDS A CONTRACT WAS FORMED BETWEEN PLAINTIFFS AND DEFENDANT, WITH THE DEFENDANT A BUYER OF BITCOIN, PERFORMANCE BY DEFENDANT WAS EXCUSED BECAUSE PLAINTIFFS MATERIALLY BREACHED THE TERMS OF THE ESCROW AGREEMENT FIRST.**

Assuming the Court finds there was a Contract formed between Plaintiffs and Defendant, with the Defendant being a buyer of bitcoin, Plaintiffs breached the Contract by failing to perform their obligation to provide bitcoin within the timeframe stipulated in the Contract, immediately or within "thirty (30) minutes."  If the breaching party has committed a "material breach," then the nonbreaching party is entitled to suspend its own performance, and assuming a showing of the breaching party's inability to cure in a timely way, the nonbreaching party can even terminate or cancel the entire contract. The law generally provides that if express conditions are not satisfied as provided for in the contract, then the party whose performance is so conditioned will be excused from its obligations to perform. As defined in section 224 of the Restatement (Second) of Contracts- "[a] condition is an event, not certain to occur, which must occur, unless its non-occurrence is excused, before performance under a contract becomes due. RESTATEMENT (SECOND) OF CONTRACTS § 224 (1979).

Defendants breached an express provision of the escrow agreement by failing to deliver bitcoin within thirty (30) minutes of the funds being sent to David Grossman. This excused any further performance by Defendant under the alleged Contract. To this effect, the escrow agreement contains two provisions regarding the timing of the bitcoin transfer after funds are received. Paragraph 17 of the escrow agreement states: "The transfer of the Bitcoins must be completed within maximum 30 minutes from the payment sent to by the Escrow Agent 1 [Patrick Kernan] to the bank account of Escrow Agent/Seller [David Grossman]. The Escrow agreement immediately above the signature further states: "Bitcoins will be transferred immediately once funds are received at our custodial bank account at Bank of America."

By breaching the agreement by failing to meet the timeline for delivery of bitcoin, Plaintiffs excused further performance by Defendant. Accordingly, Plaintiff's Complaint should be dismissed in its entirety.

**Point VI**

**PLAINTIFFS FAIL TO ALLEGE AN ATTORNEY CLIENT RELATIONSHIP BETWEEN PLAINTIFFS AND DEFENDANT THAT WOULD SUPPORT A LEGAL MALPRACTICE CLAIM.**

At the end of their Complaint, Plaintiffs make a vague allegation that Defendant committed legal malpractice in this matter and, therefore, Defendants are entitled to compensation. Plaintiffs' allegation with regard to legal malpractice must be dismissed for many reasons. Most fundamentally, Plaintiffs were never Defendant's client. There is no evidence whatsoever that Plaintiffs and Defendants had an attorney client relationship. Second, Plaintiffs fail to allege or establish the elements of a legal malpractice claim. Finally, Plaintiffs fail to allege or establish what duty of care Defendant failed to perform below the level of skill, care, and diligence that is expected in the legal profession.

**Point VII**

**PLAINTIFFS FAIL TO JOIN THE NECESSARY PARTIES TO SUCCEED ON THEIR REQUEST FOR A TEMPOARY RESTRAINING ORDER.**

Federal Rule of Civil Procedure 12(b)(7) provides that an action may be dismissed for failure to join necessary parties as defined under Rule 19. Fed. R. Civ. P. 12(b)(7). "The Second Circuit has set forth a two-step test for determining whether the court must dismiss an action for failure to join an indispensable party." *Musa v. Supershuttle Int'l, Inc.*, 2013 U.S. Dist. LEXIS 143401, 2013 WL 5507143 (E.D.N.Y 2013) (*citing DePasquale v. DePasquale*, 2013 U.S. Dist. LEXIS 30215, 2013 WL 789209 (E.D.N.Y. Mar. 1, 2013), *reconsideration denied*, 2013 U.S. Dist. LEXIS 109712, 2013 WL 4010214 (E.D.N.Y. Aug. 5, 2013) (*citing Viacom Int'l, Inc. v. Kearney*, 212 F.3d 721, 724 (2d Cir. 2000)). First, the court must determine whether a party is necessary under Rule 19(a), which provides, in relevant part, that a party must be joined if, "in that person's absence, the court cannot accord complete relief among existing parties." *Id*. (*citing* Fed. R. Civ. P. 19(a)). Second, if a necessary party cannot be joined, the court then must determine whether the party's absence warrants dismissal pursuant to Rule 19(b) because the party also is indispensable. *Musa*, 2013 U.S. Dist. LEXIS 143401 at 5-6.

Plaintiffs fail to join the United States government as a necessary party to this transaction. The United States government is currently investigating this matter and has indicated they will be seeking a court order to seize the funds. Plaintiffs recognize the United States government is an indispensable party to this action because in their show cause motion they reference the government, and its representative the United States Attorney's Office, as having an interest in this matter. However, there is no evidence that the United States was served or ever joined properly to this matter. No TRO can be issued without considering the conflicting priorities for the funds as represented by the United States government.

Point VIII

**PLAINTIFFS FAIL TO ALLEGE THE NECESSARY FACTS TO OBTAIN A TEMPORARY RESTRAINING ORDER.**

A party seeking a temporary restraining order and preliminary injunction generally must establish two elements: (1) the likelihood of irreparable injury in the absence of an order or injunction; and (2) either (a) likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for the litigation plus a balance of hardships "tipping decidedly" in that party's favor. *Federal Express Corp. v. Federal Espresso, Inc*., 201 F.3d 168, 173 (2d Cir. 2000). The Court of Appeals for the Second Circuit has defined "irreparable harm" as "an injury that is not remote or speculative but actual and imminent, and **'for which a monetary award cannot be adequate compensation**.'" *Tom Dohert Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 37 (2d Cir. 1995) (quoting Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc., 596 F.2d 70, 72 (2d Cir. 1979)).

Plaintiffs fail to fulfill the requirements of a TRO because as established above, they are unlikely to succeed on the merits of this matter. Moreover, Plaintiffs fail to allege and cannot show that monetary award cannot be adequate compensation for the relief requested in this matter. Accordingly, a TRO is not necessary and should not be granted in favor of the Plaintiffs.

## <u>CONCLUSION</u>

For the reasons set above in the motion to dismiss, Plaintiffs cannot establish the likelihood of success on the merits of this matter. Moreover, Plaintiffs cannot establish that monetary award cannot be adequate compensation for their allegations. In fact, Plaintiffs only allege in their Complaint they are seeking monetary damages. Plaintiffs allege no irreparable harm that monetary damages cannot be adequate to remedy. Accordingly, Plaintiffs' request for a TRO should be denied.

Moreover, Plaintiffs Complaint should be dismissed in its entirety for failure to state a

claim under Federal Rule of Civil Procedure 12(b)(6) and for failure to join a necessary party.

Dated: December 15, 2023                    Respectfully submitted,

_____

Patrick B. Kernan, Esq.
Kernan and Associates Law Group, PLLC
1629 K Street NW, Suite 300
Washington, DC 20006
Email: pkernan@kernanandassociateslawgroup.com
Phone cell: (703) 867-2973

## **CERTIFICATE OF SERVICE**

I hereby certify that the following has been served on December 15, 2023 with the foregoing paper via PACER ECF and e-mail:

<u>/s/  Patrick B. Kernan</u>

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DAVID GROSSMAN & ASSOCIATES PLLC, AND DANK CAPITAL SAPI DE CV. | ) ) ) |
| | ) |
| *Plaintiffs* | ) |
| | ) |
| v. | ) Civil Case Number: 23-CV-08231-NJC-LGD |
| | ) |
| KERNAN AND ASSOCIATES LAW GROUP | ) DECLARATION ) IN SUPPORT OF ) MOTION TO DISMISS |
| Defendant | ) |

---

**Patrick B. Kernan declares and states, pursuant to 28 U.S.C. §1746, as follows:**

1.      I am owner and managing member of Kernan and Associates Law Group, PLLC. I am fully familiar with the facts and circumstances set forth herein.

2.      My firm was asked to work as an escrow attorney by an attorney located in Spain, Mr. Henry Caballaro who was working as a facilitator in the purchase of bitcoin with U.S. dollars ("USD"), fiat currency for a U.S. based buyer. As an escrow attorney, my duties were to take in the USD and then receive bitcoin in a cryptocurrency wallet and then exchange each to the buyer and the seller to finalize the transaction. An escrow attorney in a cryptocurrency transaction ensures that funds are not sent to a bitcoin seller and no bitcoin is returned. Similar to other commodity transactions.

3.      As an escrow attorney, I am not involved in the negotiation of the terms of the deal. After the Parties agree to the transaction terms, I receive documents reflecting the transaction so that I can fulfill my duties as an escrow attorney. That is the case with the transaction at issue in this matter. I was not involved with the discussion of the terms between the Parties.

4.       I never talked to anyone from Dank Capital about the underlying terms of this transaction. I never talked to Mr. David Grossman about the underlying terms of the transaction. I never emailed or texted anyone from Dank or David Grossman about the terms of the transaction.

5.       I first became involved in the transaction at issue when I signed an escrow agreement with a buyer, Mr. Saman Pazooki of Zodick Trading Solutions LLC, a company based in Sterling, Virginia, so that buyer could purchase bitcoin. The buyer was introduced to me several months before and I met with him in person in Washington, DC. He discussed that he had funds from other commodity transactions such as jet fuel and investor funds that he wanted to use for cryptocurrency transactions. I received Know Your Client ("KYC") information on the buyer for verification.

6.       After the buyer signed the escrow agreement with me, the buyer had $7,600,000 (USD) funds wired to my account with Bank of America from HSBC bank. I learned after the deposit, from the wire transfer receipt the funds came from an investor and not the buyer directly.  The wire receipt was given to me by the buyer to reflect the funds were transferred. The wire receipt stated that the funds were sent to Kernan and Associates Law Group IOLTA account and the wire receipt contained my proper bank details.  The $7,600,000 was available in my bank account on October 23, 2023.

7.       After the funds were received in my account, I was advised by Mr. Henry Caballaro, who was facilitating the transaction between the buyer and seller, that the funds would need to be transferred to Mr. David Grossman, Esq.'s Bank of America account in order for the bitcoin to be sent back to my cryptocurrency escrow wallet.

8.       On October 27, 2023, I was sent Mr. David Grossman's joint escrow agreement through DocuSign so that we could enter into an attorney to attorney escrow agreement in order to move the transaction forward. I had no role in drafting this document.

2

9.      The escrow agreement signed between Mr. David Grossman, Dank Capital, and myself is contained at **(Attachment 1)** ("Grossman Escrow Agreement").

10.     In order to proceed cautiously, rather than transferring the entire amount at one time, the agreement stipulated that funds would be transferred in 3 tranches. After the first tranche bitcoin would be sent to my cryptocurrency wallet to establish that the seller actually had bitcoin to transact.

11.     In order to ensure the bitcoin were sent to the proper wallet address, I signed in DocuSign a "Wallet Verification" document to confirm the wallet addresses and the amount the amount that I would send **(Attachment 2).** The similar documents attached to Plaintiff's complaint purport to be invoices and have invoice numbers on them at the top. But the documents in DocuSign and the documents I signed do not have that title of "invoice" it just contains the title "Wallet Verification." The "invoice" title was inserted at some other time and I have never seen that document until it was attached to the Complaint.

12.     Accordingly, on October 27, 2023, I transferred $2,218,920.00 by wire to Mr. David Grossman. After three days, on October 30, 2023, I received bitcoin in return to my Kraken bitcoin escrow wallet. I immediately transferred the bitcoin received to the buyer's designated bitcoin cryptocurrency wallet.

13.     I was then advised by the buyer and Mr. Henry Caballaro to transfer the next tranche to the seller. On October 31, 2023, I went to the bank and I transferred the next $2,218,920.00. After I made that transfer, within a few hours, I was advised by the buyer and Mr. Henry Caballaro that the remaining funds needed to be transferred in order to be able to receive the bitcoin. I was told all the remaining funds should have been transferred at once not two tranches. Accordingly, on the same day, October 31, 2023, I returned to the bank and made another transfer of $2,286,160.00 so that Mr. Grossman was now holding a total of $4,505,080.00 in escrow of the buyer's funds.

14.     After the transfer of funds was made, bitcoin was not received to my escrow account from the seller. The escrow agreement with Mr. Grossman stipulated that the bitcoin would be transferred to my wallet within thirty minutes of receiving the funds into Mr. David Grossman's account. As of November 1, 2023, no bitcoin had been transferred to my bitcoin escrow wallet.

15.     While waiting for the bitcoin to be transferred to my account, on November 1, 2023, I received two telephone messages left with my office answering service asking me to return the call about a fraudulent wire transfer.  This was 8 days after the initial wire transfer had been received into my account.

16.     When I returned these calls that afternoon, one of the callers indicated he was the rightful owner of the funds ("Purported Funds Owner') and that his account was hacked and the wire transfer came to me in error.  I asked him if he just noticed it and he said he noticed a couple days ago. The other caller was an attorney that indicated she was calling on behalf of the funds owner saying that the wire transfer was intended to go to her not me. I advised both that was strange as it had been about 8 days since the wire was sent and my law firm name was clearly on the wire transfer.

17.     I advised the buyer of this development and he stated to me that it was a dispute within the organization because it was a group buying the bitcoin and they were concerned that it had not been received in a timely manner. I advised the buyer it would need to be worked out because we could not proceed further with this uncertainty if the funds were sent improperly.

18.     Shortly thereafter, I received an email from the purported investor's email business account confirming that the company wanted to move forward with the transaction. It was signed and stamped by the company.

19.     I forwarded this email to the purported funds owner and I copied all individuals

4

and emails of the individuals that were stating they wanted the transaction to move forward.  The purported funds owner replied immediately stating those email addresses used to confirm the transaction were fraudulent, although they were an almost exact replica of the company emails.

20.    Later that evening, I received a call from Ms. Abigail Tyrrell of the United States Secret Service indicating a U.S. Attorney's Office had been notified of the fraudulent wire transfer and the inquiry was forwarded to them and they were investigating. I immediately began forwarding the information they requested of me about the transaction to Ms. Tyrrell and Mr. Alan Ottarson.

21.    The next morning, upon logging into my account online, I found that my Bank of America IOLTA account was frozen. To this date, I no longer have online access to the account to see the status.  The last time I was able to check my account it was showing a negative balance of $7,600,000.00.

22.    I continued to provide information to both Secret Service agents as requested.

23.    I was verbally advised at some point in communications with the Secret Service that it was their determination that the funds transfer to me was fraudulent and the Secret Service was going to attempt to recoup as much of the funds as possible.

24.    I do not know the status of their investigation or their efforts to recoup the funds.

25.    I declare under penalty of perjury that the foregoing is true and correct. Executed on December 15, 2023 in Washington, DC.

_Patrick B. Kernan_

_____

Patrick B. Kernan

| Joint Escrow Agreement | Escrow Agent 1 | Escrow Agent 2 |
|---|---|---|
| Escrow Attorney | Kernan & Associates Group PLLC Patrick Kernan Esq | David Grossman & Associates, PLC, David Grossman Esq |
| Address | 1129 K St. NW, Ste 300, Washington DC 20006 | 36 Jasmine Lane, Kings Park NY 11754 |
| Contact Details | (202)7599912 | dgrossmanesq2000@gmail.com |

RE:    **Transaction Number:**    "SK2023/PKHC/OCT"

**Purchase Order:**    DGA/KAG/OCT2623/200

This Escrow Agreement ("Agreement") is issued on behalf of:

1. **Patrick Kernan Esq**, *as the Buyer´s Escrow Agent ("Escrow Agent 1");*
   **BTC Wallet:**    *3HULEQeQmQeknqcyCNsbnZjTMvzV1Fqa3j*
   *Receiving Bitcoins*

2. **David Grossman Esq**, *hereinafter referred to as the ("Seller");*
   **BTC Wallet:**    *bc1q89yvehrpmvkwmjmt2rynncnccrnk8ctqzfjd2r*
   *Sending Bitcoins*

3. **Mohammad Akram**, *hereinafter, referred to as the "Buyer"); (the "Buyer").*
   **BTC Wallet:**    *SEE ATTACHMENT*
   *Receiving Bitcoins*

Transaction Procedures:

a) Annexed at Exhibit A is the subject Sale and Purchase Agreement ("AGREEMENT' or 'SPA'), the terms of which are incorporated here by reference as if fully set forth herein.

b) In the event of any conflict between the transactional documents and this Agreement, the terms of the transactional agreements shall control as between the parties executing those agreements but the terms of this Agreement shall control as between either or both parties and the Escrow Agent.

c) Upon execution of this Agreement, the parties shall fund Escrow Account (see Section d. below) via wire transfer/TT or other mutually agreeable delivery method unless and until the SPA requires otherwise.

d) Payment pursuant to the Agreement will be made to the Escrow Agent to the following IOLTA Trust (the "Account") maintained by the Escrow Agent upon order placement in order to release the Bitcoins to the Escrow Agent 1 wallet.

   **Bank Name:** Bank of America
   **Bank Address:** NY5-237-01-0l, 41 Veteran's Memorial Highway Commack, NY 11725
   **Account number:** 483051939077
   **Routing number:** 021000322 (paper & electronic) 026009593 (wires)
   **Bank Officer:** Alia Evelyn Long T631.499.2800 F631.462.4726
   CUSTSVC 800.432.1000
   **Email:** alia.evelyn.long@bofa.com
   **Account Name:** David Grossman & Associates, PLLC Customer
   **Address:** 36 Jasmine Lane, Kings Park NY 11754 Customer Tel: 631-459-9241,
   **Customer Email:** dgrossmanesq2000@gmail.com

e) Upon clearance of funds or before the parties will provide Escrow Agent payment directives, CIS or KYC, the underlying transactional documents and any other due diligence materials the bank(s) may require for compliance.

[Type here]    **CONFIDENTIAL**    [Type here]

Attachment 1



| Joint Escrow Agreement | Escrow Agent 1 | Escrow Agent 2 |
|---|---|---|
| Escrow Attorney | Kernan & Associates Group PLLC Patrick Kernan Esq | David Grossman & Associates, PLC, David Grossman Esq |
| Address | 1129 K St. NW, Ste 300, Washington DC 20006 | 36 Jasmine Lane, Kings Park NY 11754 |
| Contact Details | (202)7599912 | dgrossmanesq2000@gmail.com |

The Parties further agree as follows:



Payments from the Account shall be made by Fed Wire as directed reasonably by the parties and in accordance to any delivered agreements.

2.   All payments when due will be sent by escrow agent/Seller no more than 2 business days after receiving confirmation.  This assumes the escrow agent received good and clean funds indefeasibly into the Account described herein and the release of any and all bank holds on any such funds.  All payments to or from the parties under this Agreement shall be from the Account.  Notwithstanding the foregoing, the Escrow Agent shall disburse the funds or any part thereof (subject to the same conditions and limitations) as the Parties may jointly direct in writing, including but not limited to purchase a bond or note that may be obtained for purposes of securing further financing.

3.   The Escrow Agent/Seller's fees the parties have agreed to $5,000 flat fee per tranche.  The Escrow Agent's fee is fully earned on receipt and paid upon the earlier of (a) first disbursement of funds even if funds are returned for any reason or if the Parties cancel the transaction or (b) the expiration of 30 days after the funds are received into escrow.

4.   The Escrow Agent/Seller provides no legal advice on the documentation of any transaction, its details or concerning the legal or financial merits of the transaction.  Any such advice shall be subject to a further retainer agreement signed by all parties.  The Parties agree that, absent such a further written retainer agreement signed by all parties, no attorney-client relationship will be formed.

5.   In its performance of services hereunder, the Escrow Agent/Seller cannot and does not warrant results, save as expressly provided herein.  Be assured, the Escrow Agent desires to afford the Parties with conscientious and diligent service to achieve solutions consistent with the spirit of this Agreement.
The Escrow Agent will take reasonable steps to keep the Parties informed as to the status of all matters for which the Escrow Agent provides services.  The Parties agree to provide timely, complete and accurate information and documentation to the Escrow Agent to enable the Escrow Agent to discharge its duties hereunder.

6.   The Escrow Agent/Seller only provides services as a fiduciary to ensure that any funds and instruments deposited into the Account are disbursed or delivered as instructed.  The Parties shall provide the Escrow Agent with written instructions that include the amounts to be paid to the Parties, their bank coordinates, their signatures accompanied by appropriate identification such as a passport or a driver's license, their appropriate tax identification number or forms and an attestation by them that the funds transferred to the Escrow Agent are not the proceeds of any illegal activity and will not be used for any such purposes.

7.   In following instructions, the Escrow Agent is obligated only to transfer funds and related documents as specified in any written payment instructions.  In so doing, the Escrow Agent has the right to rely exclusively upon documents in electronic form provided by the Parties.  However, if necessary, the Escrow Agent reserves the right to inspect the originals of any document to verify its authenticity before disbursing any funds.

8.   If the conditions herein are not completely fulfilled within ten (10) business days following the receipt of the funds in the Account, the Escrow Agent shall notify all Parties.  Within five (5) business days following the transmission of such notice, subject to a change authorized by the Parties, the Escrow Agent will return said funds by bank wire to the bank account from which the deposits were received, less its Escrow Agent Fees incurred up to that date and previously authorized disbursements.

9.   The fees payable to the Escrow Agent/Seller will be owed and deemed immediately paid upon the receipt of the individual tranches of any funds deposited by Buyer.  The Escrow Agent/Seller Fee shall not depend upon the completion of the underlying transaction or transactions.  All fees for the escrow services shall be paid from the funds paid hereunder into the Account.

10.   The Escrow Agent shall have no liability to either Party or any third party provided the Payments are faithfully disbursed in accordance with the terms and conditions of this Agreement.



| Joint Escrow Agreement | Escrow Agent 1 | Escrow Agent 2 |
|---|---|---|
| Escrow Attorney | Kernan & Associates Group PLLC Patrick Kernan Esq | David Grossman & Associates, PLC, David Grossman Esq |
| Address | 1129 K St. NW, Ste 300, Washington DC 20006 | 36 Jasmine Lane, Kings Park NY 11754 |
| Contact Details | (202)7599912 | dgrossmanesq2000@gmail.com |

11.    The Escrow Agent/Seller reserves the right to terminate the transaction and return funds deposited into the Account to the persons from whom the Escrow Agent/Seller has received them if it deems any of the documents, transfers or instructions to be inadequate, ambiguous, illegal or improper. Before doing so, the Escrow Agent/Seller will give any Party an opportunity to address any such concerns. The Escrow Agent/Seller desires to ensure that transfers in fact occur as intended but do not violate any laws. In this regard, the Escrow Agent/Seller reserves the right to make whatever inspections it deems necessary to ensure that any payments, transfers or transactions do not violate of the Foreign Corrupt Practices Act, anti-money laundering laws, counter-terrorism laws or some other similar banking regulations. However, the Escrow Agent/Seller will provide no legal advice or opinions on whether a particular payment, transfer or transaction comports with any such laws and regulations. Rather, the Escrow Agent/Seller reserves the right to conduct appropriate due diligence to assure itself that there have been no such violations. If the Escrow Agent/Seller concludes that there may be a violation of any such laws, it reserves the unfettered right to terminate the transaction and return all funds or instruments delivered.

12.    The entitlement to fees or other benefits under this Agreement covers the initial transaction described above, as well as any other future business transactions entered into by the Parties where the Escrow Agent/Seller is designated as such on relevant contract documents, including all extensions and rollovers, unless either of the Parties indicate to each other that on a particular Transaction that this Agreement shall not apply.

13.    After the Escrow Agent's services conclude, the Escrow Agent/Seller will, upon the Parties request and payment of copying costs, deliver any original documents, along with any funds or property of yours, in the Escrow Agent's possession. Unless the Escrow Agent notifies the Parties otherwise in writing, the Escrow Agent will retain the Parties' original documents for a period of 90 days after the Escrow Agent/Seller closes its file. At the expiration of the 90-day period, the Escrow Agent/Seller may destroy these original documents unless a Party notifies the Escrow Agent/Seller in writing that it wishes to take possession of them.

14.    The Parties agree to indemnify the Escrow Agent and hold it harmless for all claims whether civil or criminal that may be asserted by third parties arising out of its performance of this Agreement. The Escrow Agent's right to indemnity includes the right to be reimbursed for any legal fees incurred in defending such claims, even if no judgment or decree is entered against the Escrow Agent. Notwithstanding the above, the Escrow Agent/Seller is the only person civilly and criminally responsible for the delivery of the Bitcoins to be sent to Escrow Agent 1, and must ensure that the Bitcoins sent to Escrow Agent 1 are of clean and non-criminal origin.

15.    The Parties have the right to consult with an independent attorney regarding the terms of this Agreement, and the Escrow Agent/Seller urges them to do so. In signing this Agreement, each Party acknowledges that the Escrow Agent has requested each Party to seek independent legal or business advice with respect to this Agreement, and that each Party has either (i) sought and obtained such advice or (ii) has knowingly refrained from doing so.

16.    The Parties shall send a copy to the Escrow Agent/Seller of any other relevant available documentation (such as associated sale and purchase agreements) as soon as possible upon the written request of the Escrow Agent/Seller. The Parties shall make all reasonable endeavors to obtain copies of such documentation requested by the Escrow Agent.

17.    The Payments will be made by the Escrow Agent/Seller without protest, significant delay or deductions, other than standard bank charges. The transfer of the Bitcoins must be completed within maximum 30 minutes form the payment sent to by the Escrow Agent 1 to the bank account of Escrow Agent/Seller.

18.    The Parties agree that the Escrow Agent/Seller assumes full responsibility for the successfully delivery of the Bitcoins to the Escrow Agent 1 BTC wallet. In case the Bitcoins are not delivered as indicated in this document, the funds received form the Escrow Agent 1, must be returned to the Escrow Agent 1 by urgent wire transfer the same banking business day.

19.    Nothing in this Agreement shall be construed as creating any form of partnership or employee/employer relationship between the Parties. Even though the Escrow Agent is an attorney at law, the Escrow Agent provides escrow and guarantee of delivery of the Bitcoins including Bitcoin payment that must be sent to the Escrow Agent 1.



| Joint Escrow Agreement | Escrow Agent 1 | Escrow Agent 2 |
|---|---|---|
| Escrow Attorney | Kernan & Associates Group PLLC Patrick Kernan Esq | David Grossman & Associates, PLC, David Grossman Esq |
| Address | 1129 K St. NW, Ste 300, Washington DC 20006 | 36 Jasmine Lane, Kings Park NY 11754 |
| Contact Details | (202)7599912 | dgrossmanesq2000@gmail.com |





20.   This Agreement shall be valid, legally binding and enforceable even if any of the specific details of the Transactions, or the relevant transaction codes, are changed by the banks involved or by any of the Parties at any point during the Transactions.  However, the Parties shall be entitled to change their bank coordinates at any time upon reasonable written notice to the Escrow Agent.

21.   In connection with any litigation, including appellate proceedings, the prevailing Party shall be entitled to recover reasonable attorneys' fees and costs.  In the case of the Escrow Agent 1 initiating an interpleader action, the reasonable attorneys' fees and costs of the Escrow Agent shall be paid from the funds in the Account, upon approval of the court.

22.   The Parties both indemnify, defend and hold harmless the Escrow Agent 1 from any and all claims, suits, judgments or demands arising out of this Agreement, or any other agreement made by either or both of the Parties, their officers, directors, agents, or employees or its successors in interest, heirs, administrators, assigns, or any person not a party to this  Agreement, including any competent governmental authority, as long as the Escrow Agent 1 faithfully disburses all sums in accordance with the terms and conditions of this Agreement.

23.   These instructions, and any subsequent written instructions or modifications given mutually by the Parties to the Escrow Agent in connection herewith and accepted by the Escrow Agent, shall constitute the complete escrow instructions, notwithstanding any other agreement which the third parties may have concerning the subject matter hereof.  The Escrow Agent shall have no duty to construe or determine the performance or nonperformance of any term or condition of any contract or agreement between the Parties (or between either Party and any third parties), and the duties and responsibilities of the Escrow Agent are limited to those specifically stated herein.

24.   This Agreement and the instructions contained herein shall be construed in accordance with the laws of the State of New York without regard to its conflict of laws doctrines.  By execution of this Agreement, the Parties hereby expressly consent to personal jurisdiction and venue in the State of New York, County of New York, and that all claims or actions arising out of this Agreement shall be brought in a competent court in said county.  The Parties each expressly waive personal jurisdiction and venue in any other court.

29.   The Parties confirm they have no objection to any of the Parties assigning the fees they receive under the Transaction, in part or in whole, however, notice of this shall be first given in writing to the Escrow Agent, no less than 3 banking days prior to the proposed payment to the assignee of a Party's fees.
Any such assignee must consent to the terms of this Agreement in writing and provide the Escrow Agent with any AML compliance that the Escrow Agent might request.  The Escrow Agent reserves the right not to make a payment to any assignee if the Escrow Agent is unsatisfied with the assignee's AML compliance.

30.   Electronic or faxed transmission of the signed version of the Agreement shall be valid, legally binding and enforceable in respect of all its provisions.  However, any Party may demand the original of any such document.  However, the demand for any such document shall neither excuse nor delay performance by any Party, unless the receipt of such originals is a condition for payment or other performance under the Agreement.

31.   Payments shall be paid in the full amount and not in installments unless otherwise permitted herein.

32.   This Agreement is solely for the benefit of the Parties to this Agreement, and no other person or entity. To the extent that any Party is acting on behalf of another person or entity, the Escrow Agent's duties hereunder shall only extend to the Parties to this Agreement; and not to the persons or entities that a Party might represent. For example, to the extent that a Party is a corporation, the Escrow Agent's duties shall extend only to the Party corporation, and not to its shareholders, officers or directors.

33.   All persons executing this Agreement on behalf of a governmental agency, trust, corporation, partnership or limited liability party hereby represent and warrant that they have the requisite authority to execute this Agreement.  The Escrow Agent may request further proof of such authority.

34.   The Parties may cancel this Agreement with 1 (one) day's written notice to the Escrow Agent/Seller; however, (the escrow agent 1) shall remain entitled to any funds due to it up to the effective date of such termination, and Escrow Agent/Seller must return the funds received with a maximum of 24 hrs.

[Type here]                                     **CONFIDENTIAL**                                     [Type here]



| Joint Escrow Agreement | Escrow Agent 1 | Escrow Agent 2 |
|---|---|---|
| Escrow Attorney | Kernan & Associates Group PLLC Patrick Kernan Esq | David Grossman & Associates, PLC, David Grossman Esq |
| Address | 1129 K St. NW, Ste 300, Washington DC 20006 | 36 Jasmine Lane, Kings Park NY 11754 |
| Contact Details | (202)7599912 | dgrossmanesq2000@gmail.com |

35.  Prior to the disbursement of any funds, the Parties shall provide the Escrow Agent with the appropriate tax identification numbers and forms. If in the Escrow Agent's opinion, local tax law requires the Escrow Agent to withhold funds otherwise payable to a Party, the Escrow Agent shall do so in the amount required by law unless the Party produces an opinion of a lawyer or an accountant indicating that such withholding is not required.

36.  The Escrow Agent may, but is not required, to hold funds in an interest-bearing account.

37.  The Escrow Agent is authorized to provide to its bank, any and all contracts and information required by that bank to comply with any bank regulation and laws, including bank secrecy acts, anti-money laundering statutes and the like. The Escrow Agent will use his best efforts to assure that the bank receives the documents in confidence. However, the Escrow Agent will not refuse to produce such documents for its bank which are sought for these purposes. Copies of all documents provided to the Escrow Agent's bank will be made available to all of the Parties 24 hours prior to their disclosure to the bank. The Escrow Agent shall not be liable for any loss to any Party arising out of its compliance with the provisions of this paragraph.

38.  The Parties have the right to consult with another attorney regarding the terms of this agreement, and the Escrow Agent urges each Party to do so. In signing this Agreement, each Party acknowledges that the Escrow Agent has requested that each Party seek independent legal or business advice with respect to this Agreement, and that each Party has either sought and obtained such advice or has knowingly refrained from doing so.

By this letter we confirm that we are ready, willing and able to deliver the total quantity of ฿ 250 Bitcoins from our Bitcoin provider.

All Bitcoins will be sent to your escrow wallet for further distribution to the investor, legal consultants, consultants and brokers. Having your BTC wallet as:

Kernan & Associates Law Group: 3HULEQeQmQeknqcyCNsbnZjTMvzV1Fqa3j.

The funds received from you, will remain in our custody as collateral, and could be released to the bitcoin provider, only after the blockchain reflects 10 confirmations of reception of the Bitcoins into your wallet, or if we receive from you a confirmation letter.

Bitcoins will be transferred immediately once funds are received at our custodial bank account at Bank of America as described as follow:

**PARTY**

| Escrow Agent 1 | Escrow Agent 2 |
|---|---|
| Kernan & Associates Group PLLC | David Grossman & Associates, PLC, |
| Patrick Kernan Esq | David Grossman Esq |
| 1129 K St. NW, Ste 300, Washington DC 20006 | 36 Jasmine Lane, Kings Park NY 11754 |
| (202)7599912 | dgrossmanesq2000@gmail.com |
| *Signature* | *Signature* |

Patrick Kernan Esq
7D38FC45F5C94C4...

10/27/2023

A90DF9C0470C4D1...

10/27/2023

| Buyer | Seller |
|---|---|
| GPH Asia Pte | |
| Represented by: Mohammad Akram | |
| Address: 135 Edgedale Plains #02-92 Singapore 820135 | |
| ceogph@proton.me | 6C5BC2BADB5B43A... |
| *Signature* | 10/27/2023 |

GPH Asia Pte
9C6813EE7BD74AF...

10/27/2023

E. F. Ojeda Vargas

on behalf





| Joint Escrow Agreement | Escrow Agent 1 | Escrow Agent 2 |
|---|---|---|
| Escrow Attorney | Kernan & Associates Group PLLC Patrick Kernan Esq | David Grossman & Associates, PLC, David Grossman Esq |
| Address | 1129 K St. NW, Ste 300, Washington DC 20006 | 36 Jasmine Lane, Kings Park NY 11754 |
| Contact Details | (202)7599912 | dgrossmanesq2000@gmail.com |

## WALLETS ANNEX

| INVOICE NRO. | SP/102023/002 |
|---|---|
| **TRANSACTION NUMBER** | SK2023/PKHC/OCT |
| **Purchase Order:** | DGA/KAG/OCT2623/200 |

**WALLET INSTRUCTIONS FOR TRANSFERS:**

| TEST 1-2/50 | $ 6,724,000 | | | |
|---|---|---|---|---|
| **BTC Price Ref** | $ 34,200 | | | |
| **BTC Qty** | ⬚ 196.608187 | | | |
| Fees | | | | Beneficiary |
| **Main Quantity** | 100.00% | ⬚ 196.61 | $ 6,724,000 | **CLIENT** |
| 3LZs9qk7XfX9Jifkc78LDa1GCNVMkb1zKG | Total to send | ⬚ 196.6082 | | |
| | | | | |
| **Buyer Net 1** | 4.00% | ⬚ 7.86 | $ 268,960 | **CLIENT** |
| 3DkaQ8rQwgoMWctQ37iy4BLmkEz6zoJPD7 | Total to send | ⬚ 7.8643 | | |

## Fees

| **Buyer Side Fees** | 1.00% | ⬚ 1.97 | $ 67,240 | **Consults** |
|---|---|---|---|---|
| 3QzMDeaLgEy21bqH4PJrFKe3R5MhLESajY | Total to send | ⬚ 1.9661 | | |

| **Seller Side** | 1.00% | ⬚ 1.97 | $ 67,240 | **Closed** |
|---|---|---|---|---|

10/27/2023







Patrick B. Kernan
Attorney at Law
1629 K Street NW, Ste 300
Washington, DC 20006
(202) 759-9912
Admitted DC



## KERNAN AND ASSOCIATES

### WALLETS CONFIRMATION LETTER

To: David Grossman Esq / Eduardo Ojeda.

Dear David,

This letter is a confirmation that we have received your satoshi test from of the wallet listed in the Joint Escrow Agreement (J.E.A.) signed on 27 October 2023, register with the HASH d7ecbd7af9d212407c5a6c036f5140f9efcf4ac3d890ee80462cf775476bcf8b, we have attached the screenshots of the reception as requested.

I, Patrick Kernan Esq, on behalf of Kernan and Associates Law Group, under penalty of perjury, attest that the payment of **$2,218,920.00** that were transferred to the Escrow account of **Dr. David Grossman** at BANK OF AMERICA, account No. **483051939077** Routing **021000322** by Transaction Nro. SP2023/DGAPKHC/OCT dated October 27 2023, from our Escrow Account at BANK OF AMERICA Nro. **2260 0425 0326**, Routing Number: **026009593** Account Name: **DC IOLTA Trust Accounts Kernan and Associates Law Group, LLP** are funds clean, clear and of non-criminal origin.

The First stage purchase is for ฿250.0000 (Two Hundred and Fifty Bitcoins). The first payment installment has been fully transferred to David Grossman Esq Escrow account as detailed in this letter and next transfer is based on Seller performance. The following tranche is planned to be for **$6,205.080.00** approximately but depends market price at the moment of the transfer.

All installments must be delivered to the Kraken Escrow Wallet of Kernan and Associates Law Group indicated as follows:

| INVOICE NO.:  SP/102023/002 | DATE 30/10/2023 |
|---|---|
| TRANSACTION NUMBER: | SK2023/DGAPKHC/OCT |
| PURCHASE ORDER: | DGA/KAG/OCT3023/200 |

| INSTALLMENT | ITEM TO DELIVER | PRICE REFERENCE | PAYMENT DETAILS / DELIVERY DETAILS | | |
|---|---|---|---|---|---|
| | | | **Beneficiary** | **Percentage** | **Equivalent in BTC** |
| $2,218,920.00 | Bitcoin (BTC) | $33,900/BTC | Buyer Main Wallet | 100.00% | ฿ 65.4549 |
| | | | Buyer Net Discount | 4.00% | ฿ 2.6182 |
| | | | Buyer Side Fees Wallet | 1.00% | ฿ 0.6545 |

| ALL PAYMENTS TO THE FOLLOWING WALLET: | |
|---|---|
| 3Mo9SX6yyaRCpZaHABxSLoubLW2W32yjVN | KRAKEN ESCROW WALLET OF KERNAN AND ASSOCIATES LAW GROUP |
|  3Mo9S-2yjVN | ALL PAYMENTS IN BITCOIN QR CODES: VERIFIED ✓ ACTIVE WALLETS: VERIFIED ✓ |
| Main Amount: ฿ 65.4549 | |
| Discount: ฿ 2.6182 | |
| Fees: ฿ 0.6545 | |

Bitcoin transfer must be completed before 11:00 hrs on October 30, 2023

All information in this letter has been thoroughly checked, verified and authenticated. Payments go directly to the Escrow Wallet of Kraken Escrow Wallet of Kernan and Associates Law Group.

| | | | |
|---|---|---|---|
| **Patrick Kernan Esq** Kernan and Associates Law Group | **Friday, October 30, 2023** 10/29/2023 | Patrick Kernan Esq 7D39FG46F6G04G4- | *Signature* |
| **David Grossman Esq** | **Friday, October 30, 2023** 10/29/2023 | A90DF9C0470C4D1- | *Signature* |
| **Eduardo Ojeda** On behalf of DANK Group | **Friday, October 30, 2023** 10/29/2023 | 6C5GC2BAD85B43A- | *Signature* |

Issued and signed on this day of **Friday, October 30, 2023**




