UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| David Grossman & Associates PLLC and Dank Capital Sapi DE CV,<br><br>         Plaintiffs,<br><br>    -v-<br><br>Kernan and Associates Law Group,<br><br>         Defendant. | 2:23-cv-08231<br>(NJC) (LGD) |

## MEMORANDUM AND ORDER

NUSRAT J. CHOUDHURY, District Judge:

  Plaintiffs David Grossman & Associates PLLC ("Grossman & Associates") and Dank Capital Sapi DE CV ("Dank Capital") filed an Amended Complaint for damages against Defendant Kernan and Associates Law Group ("Kernan & Associates") bringing claims for breach of contract and "escrow agent and legal malpractice" stemming from alleged restraints placed on more than $4.5 million held in Grossman & Associates' Interest on Lawyer's Trust Account ("IOLTA"). ECF No. 9 ("Am. Compl.") ¶¶ 7, 38, 42 (capitalization removed). According to Plaintiffs, the U.S. Secret Service restrained these funds when Dank Capital, with the assistance of counsel at Grossman & Associates as its escrow agent, was in the process of selling bitcoin to Kernan & Associates or to an unnamed buyer represented by Kernan & Associates. *Id.* at 7; ECF No. 10-1 ("Grossman Aff.") ¶¶ 4, 12.

  On November 13, 2013, Plaintiffs filed a Motion for a Temporary Restraining Order ("TRO"), styled as an "Order to Show Cause," requesting a TRO: (1) directing the delivery of $4,500,000 in Grossman & Associates' IOLTA to Dank Capital "free and clear of any

encumbrances"; (2) ordering delivery of the $4,500,000 to Dank Capital upon the posting of a bond; (3) depositing the $4,500,000 with the Court pursuant to Rule 67, Fed. R. Civ. P.; and/or (4) requiring the parties to maintain the status quo and not move or direct others to move the $4,500,000 in IOLTA funds at issue. ECF No. 10 ("Pls.' Mot. TRO") at 1. The Court denied Plaintiffs' TRO Motion without prejudice due to Plaintiffs' failure to provide a memorandum of law addressing whether Plaintiffs made the showings required for the Court to issue this temporary relief. Elec. Order, Nov. 15, 2023. On November 30, 2023, Plaintiffs filed a Memorandum of Law, ECF No. 14, which the Court liberally construes as a renewed Motion for a Temporary Restraining Order.

The Court ordered Kernan & Associates to respond to the renewed TRO Motion by December 4, 2023. Elec. Order, Dec. 1, 2023. As of the date of this Memorandum and Order, Defendant has failed to submit a response.

The Court held a hearing on Plaintiffs' renewed TRO Motion on December 8, 2023. Min. Entry, Dec. 9, 2023. Although counsel for Defendant attended this hearing, Plaintiffs' counsel failed to appear. After several attempts by the Court to contact Plaintiffs' counsel, the Court adjourned the hearing. *See id*. To date, Plaintiffs' counsel has failed to provide the Court with a reason for the failure to appear.

The Court has reviewed Plaintiffs' Memorandum of Law along with the documents Plaintiffs previously filed with its initial TRO Motion: the Amended Complaint, a proposed "Order to Show Cause", the Affirmation of David Grossman of Grossman & Associates, and the Affidavit of Eduardo F. Ojeda, the Manager of Dank Capital. ECF Nos. 9, 10, 10-1, 10-2, 14. Kernan & Associates has not provided a written response to the TRO Motion, but has since

moved to dismiss this action for failure to state a claim under 12(b)(6), Fed. R. Civ. P. ECF No. 20.

For the following reasons, the Court denies Plaintiffs' renewed TRO Motion with prejudice.

**JURISDICTION**

Federal courts have "jurisdiction over two general types of cases: cases that arise under federal law, [28 U.S.C.] § 1331, and cases in which the amount in controversy exceeds $75,000 and there is diversity of citizenship among the parties, [28 U.S.C.] § 1332(a)." *Home Depot U.S.A., Inc. v. Jackson*, 139 S. Ct. 1743, 1746 (2019) (internal brackets omitted). For there to be diversity of citizenship, there must be "complete diversity, *i.e.* all plaintiffs must be citizens of states diverse from those of all defendants." *Pennsylvania Pub. Sch. Employees' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 118 (2d Cir.), *as amended* (Nov. 12, 2014) (internal quotation marks omitted). For purposes of diversity jurisdiction, a limited liability company has the citizenship of each of its members. *Handelsman v. Bedford Vill. Assocs. Ltd. P'ship*, 213 F.3d 48, 51–52 (2d Cir. 2000). This applies to a professional limited liability company, like Grossman & Associates. *See Sullivan v. Ruvoldt*, No. 16 CIV. 583 (ER), 2017 WL 1157150, at *5 (S.D.N.Y. Mar. 27, 2017) (relying on *Handelsman,* 213 F.3d at 51–52 to determine citizenship of a PLLC for diversity jurisdiction).

The Amended Complaint does not identify any dispute over federal law, and solely alleges that this Court has diversity jurisdiction under 28 U.S.C. § 1332(a). Am. Compl. ¶¶ 4–6. The parties are completely diverse: Plaintiff Grossman & Associates is a citizen of New York because its sole member is a New York citizen; Plaintiff Dank Capital is a foreign company

headquartered in Mexico; and Defendant Kernan & Associates is a citizen of Washington, D.C. *Id.*; ECF No. 17. The Amended Complaint further alleges that the amount in controversy exceeds the $75,000 diversity jurisdiction requirement because the contract that is claimed to have been breached was for a "minimum purchase of approximately $18.5 million" worth of bitcoin and the parties dispute the $4.5 million currently held in Grossman & Associates' IOLTA. Am. Compl. ¶ 7; *see also id.* ¶ 38 (demanding $18.5 million in breach of contract damages for the value of 250 bitcoin on November 13, 2023). Because the parties are completely diverse and the amount in controversy is satisfied, this Court has jurisdiction over this action under 28 U.S.C. § 1332(a).

This Court has personal jurisdiction over Kernan & Associates Law Group. "Where the claim arises out of, or relates to, the defendant's contacts with the forum—i.e., specific jurisdiction is asserted—minimum contacts necessary to support such jurisdiction exist where the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there." *See Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 170 (2d Cir. 2013) (internal citation and brackets omitted). Under New York's long-arm statute, "a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services in the state . . . ." N.Y. C.P.L.R. § 302(a)(1). Jurisdiction under Section 302(a)(1) requires showing that "(1) [t]he defendant . . . transacted business within the state" and that "(2) the claim asserted . . . arise[s] from that business activity." *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006) (citing *McGowan v. Smith*, 52 N.Y.2d 268, 273 (1981)). The second prong of the test "does not require a causal link between the defendant's New York business activity and a plaintiff's injury," but "[i]nstead . . . requires 'a relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former, regardless of the ultimate

4

merits of the claim.'" *Licci*, 732 F.3d at 168–69 (quoting *Licci v. Lebanese Canadian Bank*, 20 N.Y.3d 327, 339 (2012)).

The Amended Complaint alleges that Defendant Kernan & Associates is located in Washington, D.C. but either sought to purchase bitcoin from Dank Capital—a foreign company—on its own behalf or on behalf of an individual known as "Sam," who met with Defendant in Washington, D.C. Am. Compl. ¶¶ 10–14, 20. Plaintiffs do not allege Sam's citizenship. The Amended Complaint further alleges that Kernan & Associates sent money three times from its own Bank of America escrow account to the Bank of America escrow account held by Grossman & Associates—a New York entity—to purchase three tranches of bitcoin from Dank Capital. *Id.* ¶¶ 14, 25, 30. At this stage of the proceedings, it is unclear whether Defendant's act of sending money from its own Bank of America account to an account held by a New York entity at the same national bank shows that Kernan & Associates "purposefully availed [itself] of the privilege of doing business in" New York and therefore "could foresee being haled into court" here. *Licci*, 732 F.3d at 170. Defendant has not, however, moved to dismiss the claims against it for lack of personal jurisdiction under Rule 12(b)(2), Fed. R. Civ. P. *See* Def's Mot. to Dismiss, ECF No. 20. For this reason, Kernan & Associates has waived a personal jurisdiction defense and is subject to this Court's jurisdiction. *See Fuld v. Palestine Liberation Org.*, 82 F.4th 74, 89 (2d Cir. 2023) ("[T]he failure to enter a timely objection to personal jurisdiction constitutes, under [Federal Rule of Civil Procedure] Rule 12(h)(1), a waiver of the objection . . . .") (citation and internal quotation marks omitted).

The Amended Complaint does not state why venue is proper in this judicial district. It does not allege specific facts as to whether Kernan & Associates has an agent in this district or transacts affairs in this district, such that venue is proper under 28 U.S.C. § 1391(a). While Plaintiff Grossman & Associates is located within this district, it is unclear whether the transfer of money from Defendant's Bank of America account to Grossman & Associates' account at the

same national bank on three occasions demonstrates that a substantial part of the events or omissions giving rise to this action occurred in this judicial district for venue to be proper under 28 U.S.C. § 1391(b). Nevertheless, to the extent that there is no judicial district in which this action can be brought, venue is proper under 28 U.S.C. § 1391(c) because Kernan & Associates is subject to this Court's personal jurisdiction.

## STANDARD OF REVIEW

The Second Circuit has long established that a party seeking a TRO must show three things: (1) irreparable harm in the absence of an injunction pending resolution of the action, (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party, (3) and that a TRO is in the public interest. *See N. Am. Soccer League, LLC v. U.S. Soccer Fed'n*, 883 F.3d 32, 37 (2d Cir. 2018).

## FACTS

The Affirmation of David Grossman and the Affidavit of Eduardo E. Ojeda, the manager of Dank Capital, attest that Dank Capital sought to sell 250 bitcoins to a buyer represented by Kernan & Associates—or, in the alternative, to Kernan & Associates itself—and that Dank Capital enlisted Grossman & Associates to serve as its escrow agent in the sale. *See* Grossman Aff. ¶¶ 7, 10; Ojeda Aff. ¶¶ 3–7. Plaintiffs assert that Kernan & Associates misrepresented the identity of the buyer as "Mohammad Akram Bin Shows Mohd," when in reality, the buyer was Kernan & Associates itself, "an individual known as Sam," or an entity that "remains unknown." Am. Compl. ¶¶ 12, 13, 14.

6

According to Plaintiffs, the sale was to take part in several "tranches," with Kernan & Associates sending money from its escrow account to Grossman & Associates' escrow account at the same bank for the purpose of paying Dank Capital for each bitcoin tranche. *See* Grossman Aff. ¶¶ 6–7; Ojeda Aff. ¶¶ 3–7. Plaintiffs allege that the first sale of approximately 66 bitcoin was completed for $2,218,920. Am. Compl. ¶ 29. Plaintiffs assert, however, that Kernan & Associates breached the sales contract by sending only $4.5 million to Grossman & Associates' IOLTA for the sale of the second and third scheduled bitcoin tranches, rather than the full amount required to pay for the balance of 250 bitcoin. Grossman Aff. ¶¶ 10–11; Ojeda Aff. ¶¶ 10, 14. Following this alleged breach, the U.S. Secret Service put a hold on Grossman & Associates IOLTA because the funds in the account were "sourced from bad people doing bad things." Grossman Aff. ¶ 12; *see also* ECF No. 10-6 (Nov. 3, 2023 email from U.S. Secret Service Special Agent Alan Ottarson to David Grossman stating that funds in question originated from "a fraudulent email sent by a bad actor . . . .").

## DISCUSSION

While Plaintiffs allege that Defendant has breached a contract for the purchase of 250 bitcoin resulting in contract damages, Plaintiffs have not introduced sufficient evidence at this early stage to warrant the "extraordinary remedy" of a temporary restraining order. *Benisek v. Lamone*, 138 S. Ct. 1942, 1943 (2018) (per curiam) ("[A] preliminary injunction is an extraordinary remedy never awarded as of right.") (citation and quotation marks omitted).

### I.     Likelihood of Success on the Merits or a Serious Question as to the Merits

Plaintiffs fail to meet the second element required for a TRO: a showing that they are likely to succeed on the merits of their claims or, in the alternative, that there are serious questions as to the merits of their claims and that a balance of hardships tip in Plaintiffs' favor.

*See N. Am. Soccer League, LLC*, 883 F.3d at 37. Plaintiffs' brief does not address either of the two claims pled in the Amended Complaint: breach of contract and what Plaintiffs' characterize as "escrow agent and legal malpractice." Am. Compl. ¶ 42 (capitalization removed). The Court is doubtful that Plaintiffs have stated a claim for relief under these theories, much less that Plaintiffs have met the high bar of demonstrating at this early stage of the proceedings that they are either likely to prevail on these claims or that they have raised a serious question as to them.

The record at this stage of the proceedings does not show the existence of a valid contract—an essential element of a breach of contract claim. "Under New York law, a breach of contract claim requires (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of the contract by the defendant, and (4) damages." *Sackin v. TransPerfect Glob., Inc.*, 278 F. Supp. 3d 739, 750 (S.D.N.Y. 2017) (quoting *Balk v. N.Y. Inst. of Tech.*, 683 F. App'x. 89, 95 (2d Cir. 2017)); *see also 34-06 73, LLC v. Seneca Ins. Co.*, 39 N.Y.3d 44, 52 (2022) (laying out the elements of a breach of contract claim under New York law). The first element of the claim requires "plead[ing] the provisions of the contract" at issue. *James v. Countrywide Fin. Corp.*, 849 F. Supp. 2d 296, 322 (E.D.N.Y. 2012). While Plaintiffs are not required to attach a copy of the contract or quote the contract provisions verbatim, the Amended Complaint must "set forth the terms of the agreement upon which liability is predicated by express reference." *Id.* (citation and internal quotation marks omitted).

As a threshold matter, neither the Amended Complaint nor any of Plaintiffs' submissions in support of the TRO Motion include any written agreement between either of the Plaintiffs in this case—Dank Capital and Grossman & Associates—and the sole Defendant, Kernan & Associates. Nor do they attach any written agreement between Dank Capital and "Sam," the individual whom Plaintiffs allege is the actual buyer in the event that Defendant was acting on

8

behalf of another entity rather than purchasing bitcoin for itself. Am. Compl. ¶¶ 13–14. Instead, the Amended Complaint and the Ojeda Affidavit include screenshots of Microsoft Excel worksheets, which Plaintiffs contend summarize the terms of the purported agreement by Kernan & Associates or "Sam" to purchase 250 bitcoin from Dank Capital. *See* Am. Compl. ¶¶ 15, 21, 28; Ojeda Aff. ¶ 6. None of these images, however, identify the terms of such an agreement, which would necessarily address material issues such as: (1) the identity of the buyer, (2) the identity of the seller, (3) how much bitcoin was to be purchased, (4) the total purchase price, (5) when payments would be made, (6) how payments would be made, (7) when bitcoin would be delivered, or (7) how bitcoin would be delivered. Moreover, while Plaintiffs allege that one of these Microsoft Excel charts constituted Kernan & Associates' "purchase plan," whereby it "made commitments to Dank to purchase the whole sum" and as such became the "buyer," Am. Compl. ¶¶ 15, 21, the chart does not make any of those representations. Based on a close reading of the record at this stage of the proceedings, Plaintiffs have not raised a serious question about whether there was an agreement for Dank Capital to sell 250 bitcoin to Kernan & Associates or anyone else, or that Kernan & Associates breached any specific terms of such an agreement. Plaintiffs thus fail to show they are likely to succeed on the merits of their breach of contract claim or that they have raised a serious question on the merits of this claim.

      Similarly, Plaintiffs fail to raise a serious question on the merits of their claim against Kernan & Associates for escrow agent and legal malpractice. Under New York law, a breach of fiduciary duty claim requires proof of "(1) the existence of a fiduciary relationship; (2) misconduct by defendant constituting a breach of its fiduciary duty to plaintiff; and (3) damages to plaintiff directly caused by defendant's conduct." *Soley v. Wasserman*, 823 F. Supp. 2d 221, 232 (S.D.N.Y. 2011) (internal quotation marks and citation omitted). The first element—the

9

existence of a fiduciary duty—is met "wherever 'one person is under a duty to act for or give advice for the benefit of another upon matters within the scope of the relation.'" *Am. Tissue, Inc. v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 351 F. Supp. 2d 79, 102 (S.D.N.Y. Aug. 10, 2004) (quoting *Flickinger v. Harold Brown & Co.*, 947 F.2d 595, 599 (2d Cir. 1991)). Fiduciary duties may be created by the formation of an attorney-client relationship. *In re Hayes*, 183 F.3d 162, 168 (2d Cir. 1999) (applying New York law).

Plaintiffs' submissions do not show that Kernan & Associates owed either Dank Capital or Grossman & Associates a fiduciary duty. There is no evidence in the record that either Grossman & Associates or Dank Capital retained Kernan & Associates to serve as their counsel. While Dank Capital enlisted Grossman & Associates to serve as its escrow agent, Dank Capital has not sued Grossman & Associates for breach of any fiduciary duty. Nor have Plaintiffs shown that Kernan & Associates owed either Dank Capital or Grossman & Associates any fiduciary duty due to Defendant's role as escrow agent for a client seeking to purchase bitcoin. *See Lucas v. Lalime*, 998 F. Supp. 263, 268 (W.D.N.Y. 1998) ("Mere deposit of funds into an attorney's escrow or trust account is not sufficient to establish the requisite attorney-client relationship"). For all of these reasons, Plaintiffs fail to raise a serious question as to the merits of the escrow agent and legal malpractice claim.

## II.     Irreparable Harm

Plaintiffs have not shown that they will suffer irreparable harm absent the grant of a TRO. Demonstrating irreparable harm is "the single most important prerequisite for the issuance of" a temporary restraining order. *Faively Transport Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009). The Second Circuit has made clear that "[t]o establish irreparable harm, a party seeking preliminary injunctive relief must show that there is a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide

10

adequate compensation." *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002) (internal quotation marks omitted). In other words, if the loss Plaintiffs allege can be calculated and compensated through damages, Plaintiffs have failed to show irreparable harm.

Plaintiffs allege that they are at risk of two forms of irreparable harm: (1) Dank Capital's loss of the funds that Kernan & Associates transferred to Grossman & Associates' IOLTA; and (2) Grossman & Associates' inability to access any funds in its IOLTA. Pls.' Mem. Supp. TRO at 2–3. More specifically, Plaintiffs argue that Grossman & Associates:

> will suffer immediate and irreparable harm if the $4.5 million USD is not restrained by Order of this Court because the funds must be safeguarded until a proper determination can be made who should receive the funds. Plaintiffs contend the funds are theirs and if lost there will be irrecoverable consequences.

*Id.* at 2. Plaintiffs further allege that "[t]he Secret Service asserts the funds belong to unknown others. Meanwhile the IOLTA is completely paralyzed in an amount in excess of the disputed amount with no end in sight Dank remains deprived use of the funds and the law firm deprived use of its IOLTA account." *Id.* Plaintiffs argue that "[t]here is good cause to believe immediate and irreparable damage to the Court's ability to grant effective final relief to Plaintiffs in this case if the parties suffer catastrophic consequences at the beginning of the case." *Id.*

Dank Capital's only argument as to irreparable harm is to point to the funds it has lost due to the alleged breach of contract with Kernan & Associates. Am. Compl. ¶ 38; Ojeda Aff. ¶ 9–15. Dank argues that it is in default with its own bitcoin supplier because it purchased bitcoin to fulfill the terms of the alleged contract, but now does not have the funds to pay its supplier and may also incur a performance penalty. Ojeda Aff. ¶¶ 12, 15. But these losses are entirely compensable by money damages because they can be calculated by determining what Dank Capital paid its bitcoin suppliers in order to have supply on hand to fulfill the terms of the

11

purported contract and the amount of any performance penalty that it has been, or will be, charged.

Grossman & Associates' inability to access their IOLTA in its entirety may suggest the potential for irreparable harm, but Plaintiffs' arguments convey that Plaintiffs' principal concern is with the activities of the U.S. Secret Service relating to Grossman & Associates' IOLTA—and not the breach of contract or legal malpractice claims against Kernan & Associates. According to Plaintiffs, until Dank Capital's breach of contract claim against Kernan & Associates is resolved, Plaintiff Grossman & Associates is unable to touch any of its IOLTA funds without fear of reprisal from the U.S. Secret Services. This Court is unable to grant a TRO, however, when Plaintiffs have failed to show any serious questions on the merits of their claims.

Plaintiffs' arguments on irreparable harm raise a fundamental question about the nature of this litigation. Plaintiffs ask this Court to provide the extraordinary remedy of a TRO moving funds from Grossman & Associates' IOLTA to either to Dank Capital or this Court, or in the alternative, directing parties to maintain the status quo and not move or direct others to move the funds at issue. But none of this requested relief is directed against the Defendant, raising questions about whether the U.S. Secret Service, United States Attorney, or another entity—rather than Defendant—is the proper party to sue for the relief Plaintiffs request in the TRO Motion. The Court notes that IOLTA funds are highly regulated by the state,[1] and that requesting

---

[1] An IOLTA is defined by New York law as "an unsegregated interest-bearing deposit account . . . for the deposit by an attorney of qualified funds." N.Y. Jud. Law § 497(1) (McKinney Supp. 1991); *see also Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 279 n.1 (2d Cir. 2006). "Qualified funds" are defined as, "monies received by an attorney in a fiduciary capacity from a client or beneficial owner and which, in the judgment of the attorney, are too small in amount or are reasonably expected to be held for too short time to generate sufficient interest to justify the expense of administering a segregated account for the benefit of the client or beneficial owner." *Id*. (citation omitted). The interest earned by an IOLTA "is remitted directly to the state" and is

a federal court to interfere with the handling of those funds necessarily requires a clear showing that Plaintiffs will suffer irreparable harm absent the issuance of a TRO directed at the Defendant and have met the other requirements for the grant of preliminary relief.

### III.   Balance of Hardships and Public Interest

Because Plaintiffs have failed to meet the first two prongs of the threshold requirements for a TRO, the Court does not address the balance of hardships and the public interest in the issuance of the specific TRO that Plaintiffs request.

## CONCLUSION

For the reasons set forth above, the Court denies Plaintiffs' TRO Motion with prejudice.

Dated: Central Islip, New York

January 2, 2024

                                                                                    _____/s Nusrat J. Choudhury_____
                                                                                     NUSRAT J. CHOUDHURY
                                                                                     United States District Judge

---

used "to pay for legal assistance for the poor, and to improve the administration of justice generally." *Id*. (citation omitted).