UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

CIVIL DIVISION

-------------------------------------------

DAVID GROSSMAN & ASSOCIATES PLLC, and DANK CAPITAL SAPI DE CV.

                      Plaintiffs

     -v-

KERNAN AND ASSOCIATES LAW GROUP,

                  Defendant

------------------------------------------------x

MEMORANDUM OF LAW IN OPPOSITION OF MOTION TO DISMISS

2:23-cv-08231-NJC-LGD

## <u>MEMORANDUM OF LAW IN OPPOSITION OF MOTION TO DISMISS</u>

## <u>TABLE OF AUTHORITY</u>

1. Bendit v. Canva, Inc., 2023 U.S. Dist. LEXIS 148973, *14, 2023 WL 5391413

2. Blue Ridge Invs., LLC v. Anderson-Tully Co., 2005 U.S. Dist. LEXIS 244, *1, 2005 WL 44382

3. Brook v. Simon & Partners LLP, 783 Fed. Appx. 13, 14, 2019 U.S. App. LEXIS 23549, *1, 2019 WL 3673229.

4. Compass Prods. Int'l v. Charter Communs., 2022 U.S. Dist. LEXIS 4766, at *1 (S.D.N.Y. Jan. 10, 2022)

5. Fasolino Foods Co. v. Banca Nazionale Del Lavoro, 961 F.2d 1052, 1053, 1992 U.S. App. LEXIS 6831, *1, 17 U.C.C. Rep. Serv. 2d (Callaghan) 561

6. Kaleida Health v. Medtronic Sofamor Danek USA, Inc., 2006 U.S. Dist. LEXIS 92295, *4-5

7. Law Debenture Trust Co. v. Maverick Tube Corp., 595 F.3d 458, 461, 2010 U.S. App. LEXIS 3423, *1

8. Stapleton v. Barrett Crane Design & Eng'g, 725 F. App'x 28, 30 (2d Cir. 2018) .

## PRELIMINARY STATEMENT

Plaintiffs, David Grossman & Associates PLLC, & Dank Capital SAPI DE CV, by their attorneys Kelly, Grossman, Kerrigan LLP (thereafter 'KGK'), submit this memorandum of law in opposition to Defendant, Kernan and Associates Law Group's, ("KALG") motion to dismiss. Plaintiffs' claims raise genuine issues of material facts between the parties, and as such Defendant's motion to dismiss should be denied.

The parties agreed for the exchange of Bitcoin and this is evidenced by documents, communications, bank records and the parties' agreements which were all drafted exclusively by Defendant. Specifically, there were three written contracts which Defendant prepared and circulated on docusign to memorialize the deal status and agreement of the parties at that time. See Exhibits A, D and E. These "agreements" were borne and/or evolved through multiple communications and agreements as the deal transpired.

In short there was an offer, acceptance, consideration and performance present necessary to form a contract between the parties. Moreover, there was mutual assent between the parties in so far as the money was sent which was intended to purchase the Bitcoin. The Plaintiffs also should be excused from any duty to release additional Bitcoin past the first 65 Bitcoin released as the Plaintiff only provided 2.5 million dollars necessary for the provided 65 Bitcoin. Further the Defendant had to provide approximately 10 million dollars upfront to buy 250 Bitcoins[1], which did not occur and thus was the initial and material breach that the Plaintiffs' valid claims for damages arise from.

---

[1] 250 BTC = $ 11,716,250.00 US Dollar on January 9, 2024

The Defendant's assertion that there was no contract between the parties is erroneous but in the alternative the Court may find there is sufficient evidence present to clearly infer the intent of the parties to form a quasi-contract. The Plaintiff respectfully requests this Court find that a contract was formed.  In the alternative we suggest the Court hold there was minimally an implied in law contract and/or oral contract.

Defendant argues an oral contract would be violative of New York's Statute of Frauds.  We contend this is not an issue here as there are three written contracts.  If the Court finds these do not suffice as 'contracts' then the oral contract would not violate the Statute of Frauds because we have performance.  Under New York law, the doctrine of part performance may be invoked if plaintiff's actions can be characterized as unequivocally referable to the agreement alleged. The actions alone must be unintelligible or at least extraordinary, explainable with reference to the oral agreement. The United States Court of Appeals for the Second Circuit (Second Circuit) held that the existence of an oral agreement must be inferred from conduct, actions that might well have been undertaken in fulfillment of the agreement but could also have been done for entirely different reasons are insufficient to prove the existence of the agreement.  Blue Ridge Invs., LLC v. Anderson-Tully Co.  No. 04 Civ. 3777 (HB) (FM) (United States Southern District 2005).

Here the transaction numbers, listed wallets, tranche schedule and reference numbers are all identical. Also the dollar amounts match, the deals flow from one into the next. Both agreements talk of 250 bitcoin and have the same transaction.  The linkage could not be more direct and linear. There can be no doubt we contend.  In any event we respectfully argue the existence of the three written agreements should hopefully be self-evident and establish the parties contracted in the gross amount of 250 bitcoins.

The Defendant's also assert if there was a written agreement that the parole evidence rule would bar the introduction of any prior evidence; however, this only dismantles their own argument that there was no contract formed. Defendant's assertions that the statue of fraud was violated is meritless since there are contemporaneous writings signed by both parties that amount to written agreements.

The Defendant's assertion Plaintiff breached the escrow agreement by not releasing the funds within thirty minutes of having received the $4.5 million is baseless since the funds were frozen and could not be transferred. The Plaintiff's duty to perform the release of the funds once they clear. This is a condition subsequent that was not triggered since the Defendants failed to provide the necessary funds to trigger this conditional release. The first agreement (Exhibit A) at paragraph two specifically states the duty to transfer the funds is based upon the assumption the funds are good, free and clear and that there are no bank holds. Furthermore, the Court may also find that the Plaintiffs' duty to release said conditional funds should be excused due to impracticability and the impossibility of releasing funds since these funds were frozen due to unforeseeability, and through no fault of the Plaintiffs. The full amounts to be sent were never sent by Defendant as required by the agreement of the parties is the position of the Plaintiff.

Based on the foregoing reasons, Plaintiffs respectfully request this Court deny Defendant's motion to dismiss.

## <u>STATEMENT OF FACTS</u>

1. There were multiple written agreements entered into between the parties which support denying Defendant's motion. In fact all the Contracts ironically which Defendant challenges were drafted by Defendant. Dank had been speaking with Defendant for some time along with another attorney from Spain who was working with Defendant, Henry Caballero. Defendant prepared an informative illustration summarizing the agreement and proposed plan of the parties and confirmed the deal procedure and the fact the purchase would be for an initial 250 bitcoins, which exceeds ten million USD:



Friday, November 9, 2023
1. Test for: $11.23 or else requested from client.
2. Buyer will provide full KYC, AML and CIS directly to PK before the transfer for approval.
3. Buyer to transfer funds into PK Escrow Account within 48hrs after A2B test.
4. After clearance of the escrow funds, PK and DG move to signing a Joint Escrow Agreement.
5. Funds moves to DG, and DG confirms to EO.
6. EO deliver BTC to PK.
7. PK and DG execute the SWAP.
8. Edu to send fees and discount to PK for distribution.

2. Defendant was very organized and really wanted to make sure the agreement was clear for everyone. Defendant then sent it over in excel with a reconfirmation referencing the planned escrow agreement with the linked wallets and full details:



| 1st Transfer | | 33.00% | $ 2,218,920 | | | |
|---|---|---|---|---|---|---|
| Main Quantity Wallet | | | ฿ 65.4549 | Price ref/BTC | | |
| Buyer Net 1 Discount wallet | | | ฿ 2.62 | $ 33,900.00 | | |
| Buyer Side Fees wallet | | | ฿ 0.65 | | | |
| 2nd Transfer | | 33.00% | $ 2,218,920 | | | |
| Main Quantity Wallet | | | ฿ 65.4549 | | ฿ 198.3481 | |
| Buyer Net 1 Discount wallet | | | ฿ 2.62 | | ฿ 7.9339 | |
| Buyer Side Fees wallet | | | ฿ 0.65 | | ฿ 1.9835 | |
| 3rd Transfer | | 34.00% | $ 2,286,160 | | | |
| Main Quantity Wallet | | | ฿ 67.4383 | | | |
| Buyer Net 1 Discount wallet | | | ฿ 2.70 | | ฿ 248.4956 | |
| Buyer Side Fees wallet | | | ฿ 0.67 | | | |
| | | | | | | |
| 4th Transfer | | | $ 1,700,000 | | | |
| Main Quantity Wallet | | 100.00% | ฿ 50.1475 | | ฿ 50.1475 | |
| Buyer Net 1 Discount wallet | | 4.00% | ฿ 2.01 | | ฿ 2.0059 | |
| Buyer Side Fees wallet | | 1.00% | ฿ 0.50 | | ฿ 0.5015 | |
| | | | | | | |
| Wallets as in the Escrow Agreement | | | | | | |
| Main Quantity Wallet | | | 3LZs9qk7XfX9Jifkc78LDa1GCNVMkb1zKG | | | |
| Buyer Net 1 Discount | | | 3DkaQ8rQwgoMWcfQ37iy4BLmkEz6zoJPD7 | | | |
| Buyer Side Fees | | | 3QzMDeaLgEy21bqH4PJrFKe3R5MhLESajY | | | |

3. Had things gone proper the larger plan was also agreed to and confirmed again by Defendant in writing:

| Wallet Balance | Test Type | Buyer code | Country | Satoshi Receiving Wallet | PAYMENT | AMOUNT | Payment Form |
|---|---|---|---|---|---|---|---|
| ฿ 5,000 | direct | SWISS1 | SWISS 🇨🇭 | | DIRECT TO SELLER | $ 150,000,000.00 | FIAT |
| | A to B | GERMAN1 | DE 🇩🇪 | | Payment via Escrow | $ 150,000,000.00 | FIAT |
| | A to B | PANAM1 | PA 🇵🇦 | | Payment via Escrow | $ 70,000,000.00 | USDT |
| | A to B | LELEY1 | US 🇺🇸 | | Payment via Escrow | $ 150,000,000.00 | FIAT |
| | | | | | | | |
| ฿ 250 | Direct | LISA1 | US 🇺🇸 | | DIRECT TO SELLER | $ 7,800,000.00 | |
| | | | | | | | |
| FOR EXECUTING THIS PLAN, WE NEED 2 SATOSHIS | | | | | DIRECT PAYMENTS | $ 157,800,000.00 | |
| | | | | | FUNDS IN ESCROW | $ 370,000,000.00 | |

*4.* According to Dank the parties agreed and planned to flow seamlessly into these successive tranches.

### *CONTRACT ONE (Exhibit A)*

5. After sorting out all details which Defendant captured in a written Agreement, drafted exclusively by Defendant, it was then circulated by docusign by Defendant. A copy of *CONTRACT ONE* is attached at Exhibit A. This is a crucial Exhibit as it details and corroborates Plaintiffs' claims. Some of the key issues in this agreement worth highlighting are:

   a.  <u>WHO IS THE BUYER?</u>

      i.  This agreement states the buyer is "Mohammad Akram of GOH Asia Pte" at page 5 and a KYC was provided as well.  Exhibit B.

      ii.  Defendant writes something very different in Court - stating "I first became involved in the transaction at issue when I signed an escrow agreement with a buyer, Mr. Saman Pazooki of Zodick Trading Solutions LLC, a company based in Sterling, Virginia, so that buyer could purchase bitcoin. The buyer was introduced to me several months before and I met with him in person in Washington, DC. He discussed that he had funds from other commodity transactions such as jet fuel and investor funds that he wanted to use for cryptocurrency transactions. I received Know Your Client ("KYC") information on the buyer for verification."

      iii.  Defendant never disclosed this buyer, never gave KYC and AML for Saman Pazooki and had us sign an agreement and gave us documents for someone else.  Plaintiffs never heard this name until after the funds were frozen and even then it was in passing.

      iv.  Defendant is the *de* facto buyer:  Defendant sent the funds.  Defendant supplied the information.  Defendant is the only entity with the ultimate knowledge and responsibility.  Perhaps most importantly Defendant prepared and executed the agreements.  In fact the agreement describes the buyer at one point as an 'investor' – stating proceeds will be distributed amongst the investor, legal consultants, consultants and brokers.  <u>Id</u> at 5.

   b.  <u>SCOPE OF THE TRANSACTION</u>

    i.   The agreement Defendant circulated which all parties executed confirms the transaction was to total 250 bitcoins.

    ii.   The agreement required seller confirm this fact and obligate itself to supply the same.

    iii.   The clause states:  **By this letter we confirm that we are ready, willing and able to deliver the total quantity of ₿ 250 Bitcoins from our Bitcoin provider.** Id **(emphasis added).**  Considering this, Plaintiff Dank made a firm and binding commitment with its supplier to procure the specified quantity of Bitcoin (BTC).

    iv.   Further, pursuant to paragraph 31 the full amount of the gross purchase was due and expected and not in installments.

    v.   The first step of the purchase or first tranche was supposed to be $6,724,000. Id. At 6.  This is in the contract prepared by Defendant and signed by all parties.  The purchases would continue until the 250 bitcoins transferred in a few steps as confirmed by the parties here in the document prepared by Defendant:

6.   Once the first contract was fully executed a proof of funds in the form of a screen shot of Defendants IOLTA account was provided to DANK to confirm Defendant was holding sufficient funds to pay for the first contemplated tranche.  See Exhibit C.

7.   At this point Dank was expecting Defendant to send over the money detailed in the Contract, about $7 million, to purchase about 200 Bitcoin for the first tranche.  The contract prohibited anything less.

### *CONTRACT TWO (Exhibit D)*

8. The successive contracts are more riders or amendments than new contracts. The situation was fluid in reality rather than there being multiple transactions. Instead of sending the full amount as planned Defendant sent about 1/3 for some unknown reason. Specifically on Friday October 27, 2023 Defendant sent $2,218,920 into my escrow:



9. Defendant the same day circulated a letter with a new wallet address to receive the bitcoin. There were not many other changes. This letter agreement unilaterally drafted by Defendant for its own purpose and to satisfy its unilateral amendments and is ***CONTRACT TWO***. It is also a rider to contract one but it is at the same time an agreement on its own.

10. **CONTRACT TWO** *is annexed at Exhibit D and the key issues for our purposes here include:*

   a. This document confirms performance of payment related to a specific transaction and pursuant to and as part of a contemplated procedure. This is very important in light of the fact Defendant argues we do not have sufficient proof of the existence of a written contract. If there is no written contract we would argue we have an

oral contract plus performance. This really is not even necessary because there are several strong and clear agreements but Defendant raises the point so it is worth responding briefly.

b. Under New York law, the doctrine of part performance may be invoked only if plaintiff's actions can be characterized as unequivocally referable to the agreement alleged. The actions alone must be unintelligible or at least extraordinary, explainable only with reference to the oral agreement. The United States Court of Appeals for the Second Circuit (Second Circuit) held that the existence of an oral agreement must be inferred from conduct, actions that might well have been undertaken in fulfillment of the agreement but could also have been done for entirely different reasons are insufficient to prove the existence of the agreement. Blue Ridge Invs., LLC v. Anderson-Tully Co. No. 04 Civ. 3777 (HB) (FM) (United States Southern District 2005). Here the transaction numbers and wallets and reference numbers are all identical.

c. The dollar amounts match.

d. The deals flow from one into the next.

e. Both agreements talk of 250 bitcoin and have the same transaction, reference numbers and wallet addresses. The linkage could not be more direct and linear. There can be no doubt. In any event we respectfully contend the existence of two written agreements should hopefully be self evident in the gross amount of 250 bitcoins.

f. Next Defendant certified and affirmed the funds were free, clear, clean and of non-criminal origin. This is important as plaintiffs relied upon the due diligence,

expertise and representation of Defendant. What research was done before issuing

that certification?

g.  This contract TWO confirms the first round will purchase 250 bitcoin.

h.  This agreement importantly confirms the next payment amount will be

i.  The following tranche was promised to be for $6,205.080.00. As will be explained

below yet again this does not happen for some unknown reason.

j.  **Based upon the fractional payment of** $2,218,920 an equivalent amount of

Bitcoin was immediately delivered to the designated wallet completing the first

round without a problem:



CONTRACT THREE (Exhibit E)

11. Yet again Defendant modified unilaterally the amount and decided to send something less. This time Defendant sent $4.5 million along with CONTRACT number 3.  Note I was still in the UAE.

12. Defendant had just promised in CONTRACT TWO to send $6,205.080.00 and inexplicably and unilaterally again lowered it by 1/3.   Again Defendant prepared its own agreement and sent it around via docusign.

13. What is very important here is we have a third contract on Defendant letterhead prepared and circulated by Defendant confirming the agreement of the parties with transmission of funds.  It is very confusing how Defendant can argue there was never an agreement in this matter.

14. The Third Contract was similar but did not proceed as smoothly as the second.  Although it seemed funds could move at first it became clear they could not. At this point the escrow had just over $4.5 million USD.  Attempts to transfer the funds and complete the tranche initially encountered an  error:



15. This went on for a day or two and at one point a banker bank suggested to try a lower amount of $500,000 and it seemed to work.  The bank reversed the $500,000 and took it back and then put a 'hold pending' on the entire account which remains in effect.  As such the account balance shows zero available.

16. The contracts have been breached by Defendant.  The true identity of the buyer was concealed.  The quality of the purchase funds were misrepresented detrimentally.  Plaintiffs relied upon the promises and representations and agreements with Defendant and secured the requested minimum 250 bitcoins only to Defendant fail to purchase them.  The dishonesty about the money, the buyer and the ability to buy breached the agreements which ironically defendant drafted and as a resulted Plaintiffs have been damaged.

## ARGUMENT

## THERE WAS AN ENFORCEABLE CONTRACT PRESENT

### Point I

**THE EVIDENCE PROVIDED CONCLUSIVELY LAYS OUT AN ENFORCEABLE CONTRACT IS PRESENT**

"To establish the existence of an enforceable agreement, a plaintiff must establish an offer, acceptance of the offer, consideration, mutual assent, and an intent to be bound. That meeting of the minds must include agreement on all essential terms." Stapleton v. Barrett Crane Design & Eng'g, 725 F. App'x 28, 30 (2d Cir. 2018) . The instant deal between the parties was to purchase two hundred and fifty (250) Bitcoins.. "Whether there has been a meeting of the minds on all essential terms is a question of fact that must be resolved by analyzing the totality of the circumstances. To determine the presence of mutual assent, the totality

of parties' acts, phrases and expressions must be considered, along with the attendant circumstances, the situation of the parties, and the objectives they were striving to attain. If the Court finds substantial ambiguity regarding whether both parties have mutually assented to all material terms, then the Court can neither find, nor enforce, a contract.

If a contract is not reasonably settled in its material terms, there can be no legally enforceable contract. To create a binding contract, there must be a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms." Compass Prods. Int'l v. Charter Communs., 2022 U.S. Dist. LEXIS 4766, at *1 (S.D.N.Y. Jan. 10, 2022) The essential terms of the agreement between the parties was conveyed in writing, on the escrow agreement, through their various correspondence exhibited and the parties 'course of previous completed performance and the current partial performance of the transaction at issue, which is the breach of contract therein. The essential terms for the agreement were the parties, and the transactions, which are present, therefore the parties formed an enforceable contract.

<strong>Point II</strong>

**WHERE THE COURT FINDS THE EVIDENCE LESS THAN CONCLSUIVE OF EXIESTANCE OF AN ENFORCEABLE CONTRACT PRESENT, THE EVIDENCE HERE IMPLIES A QUASI CONTRACT IS PRESENT AND SHOULD BE EQUITABLY ENFORCED**

"The quasi-contract theory of recovery exists precisely to address unjust enrichment occurring in the absence of a binding agreement between the parties. A quasi or constructive contract rests upon the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another. In truth it is not a contract or promise at all" Brook v. Simon & Partners LLP, 783 Fed. Appx. 13, 14, 2019 U.S. App. LEXIS 23549, *1, 2019 WL 3673229. Here, Plaintiff, Dank Capital, purchased the Bitcoin at issue from a third-party vendor necessary to fulfill the invoices that Defendant executed for the purchase of this Bitcoin.

If this Court determines no contract was formed through their agreement, the Court should look to the totality of the evidence provided between the parties to the exchange. "To determine whether the parties' conduct evinces a binding agreement, courts must consider the totality of all acts of the parties, their relationship and their objectives" Brook v. Simon & Partners LLP, 783 Fed. Appx. 13, 14, 2019 U.S. App. LEXIS 23549, *1, 2019 WL 3673229.

On October 27,2023, Defendant electronically signed exhibit A whereby this document entitled Written Confirmation Letter evidenced the first tranche transaction. This part of the transaction was completed as the parties intended; however, it was only the first of the multiple contracts signed by the parties.  See also Exhibits D and E.

**Point III**

**ALL CONTRACTUAL AMBIGUITIES SHOULD BE CONTRUED AGAINST THE DRAFTER**

Contra proferentem, a rule of contract interpretation, is a Latin term that means "against the offeror". Contra proferentem states an ambiguous contract term should be construed against the drafter of the contract. In the instant action drafter of the agreements between the parties was Defendant, and as such any ambiguity shall be construed against Defendant. "The matter of whether a contract is ambiguous is a question of law for the court." Law Debenture Trust Co. v. Maverick Tube Corp., 595 F.3d 458, 461, 2010 U.S. App. LEXIS 3423, *1

**<u>DEFENDANT BREACHED THE CONTRACT</u>**

**Point I**

**THE DEFENDANT BREACHED THE APPARENT CONTACT BETWEEN THE PARTIES IN SO FAR AS NOT FULLY TRANSFERRING THE AGREED TO AMOUNT**

**ORIGINALLY AGREED, AND NOT FULFILLING THEIR CONTRACTUAL DUTY TO BUY THE ENTIRE 250 BITCOINS**

The Defendant only provided $2,218,920 of the originally agreed, and therefore breached the parties contract. The entire exchange was intended to be for 250 Bitcoin and the Plaintiffs only paid enough to buy 65 Bitcoin. The Defendant's caused harm to the Plaintiffs in so far the Plaintiff committed to Bitcoin as part of their agreement with Defendant. Dank's credit account and business are in jeopardy due to Defendant's breach and failure to make payment.

### Point II

**THE DEFENDANT BREACHED THEIR CONTRACTUAL DUTY IN SO FAR AS DEFEDANT DID NOT APPARENTLY FURNISH FUNDS THAT WERE CLEAN AND FREE AND OF NON-CRIMINAL ORIGIN**

Each time the Plaintiff delivered funds he certified and confirmed under penalty of perjury that the funds delivered were clean and free and of non-criminal origin.  These certifications come entirely within question since the funds are presently frozen due to apparently being linked to criminal activities.  Although it remains unconfirmed, apparently the United States Secret Service will be or already are investigating these funds and are the ones behind the funds being restrained..

### Point III

**THE DEFENDANT BREACHED THEIR CONTRACTUAL DUTY OF GOOD FAITH AND FAIR DEALING OWED TO THE PLAINTIFFS**

"Under New York law, parties to an express contract are bound by an implied duty of good faith, but breach of that duty is merely a breach of the underlying contract." Fasolino Foods Co. v. Banca Nazionale Del Lavoro, 961 F.2d 1052, 1053, 1992 U.S. App. LEXIS 6831, *1, 17 U.C.C. Rep. Serv. 2d (Callaghan) 561 Here, the parties expressly agreed to the parties to the agreement, quantity of funds to be transferred in each tranche, how much bitcoin would be bought overall and that the funds provided were non-criminal and clean. The parties signed the escrow agreement and each written confirmation letter; therefore, the duty of good faith and fair

dealing applies to the contract in the instant action. Furthermore, the Plaintiff originally claimed and provided documents to support, during the formation of this transaction, that Plaintiff's client was Mohammad Akam Bin Ghows Mohd, see Exhibit A, however then he vaguely claimed that his client was named "Mr. Saman Pazooki of Zodick Trading Solutions LLC" or in fact KERNAN AND ASSOCIATES LAW GROUP itself in their Declaration in Support of Motion to Dismiss at paragraph 5, e-filed document 20. This is a clear contradiction of fact and is also questionable considering that the written confirmation letters and the escrow agreement, all drafted by Defendant. The Joint Escrow Agreement states "***Patrick Kernan Esq***, *as the Buyer´s Escrow Agent* (*"Escrow Agent 1"); **Mohammad Akram**, hereinafter, referred to as the "Buyer"); (the "Buyer")"* see Exhibits A.  It is incredible to be wondering at this late date whose money is sitting in the Bank of America account.  Only the defendant knows.  It entered his escrow account from somewhere obviously.

## MOTION TO DISMISS

### Point I

### THE COURT SHOULD REVIEW THE EVIDENCE IN THE NON-MOVANT'S FAVOR

"The standards for district court review of a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted are well known. The court must "accept as true the factual allegations of the complaint and draw all inferences in favor of the pleader." *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1174 (2d Cir. 1993). [*5] However, "legal conclusions, deductions, or opinions couched as factual allegations are not given a presumption of truthfulness." *L'Europeene de Banque v. La Republica de Venezuela,* 700 F. Supp. 114, 122 (S.D.N.Y. 1988), *quoted in Baines v. Masiello,* 288 F. Supp. 2d 376, 383 (W.D.N.Y. 2003). The complaint may only be dismissed when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S.

41,    45-46,    78    S.    Ct.    99,    2    L.    Ed.    2d    80    (1957)."

Kaleida Health v. Medtronic Sofamor Danek USA, Inc., 2006 U.S. Dist. LEXIS 92295, *4-5

Here, the Defendant moved for dismissal of the Complaint, thus the Court should draw all inferences in favor of the Plaintiff.

**Point II**

**THE PLAINIFFS' COMPLAINT HAS PROVIDED SUFFICENT EVIDENCE TO DEFEAT DEFENDANT'S MOTION TO DISMISS UNDER NY LAW**

"Under New York law, to survive a motion to dismiss a breach of contract cause of action, a complaint must allege facts plausibly suggesting "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of the contract by the defendant, and (4) damages." *Habitzreuther v. Cornell Univ.*, 2015 U.S. Dist. LEXIS 112209, 2015 WL 5023719, at *5 (N.D.N.Y. Aug. 25, 2015); *see also Fuji Film USA, Inc. v. McNulty*, 669 F. Supp. 2d 405, 412 (S.D.N.Y. 2009) (applying same)." Bendit v. Canva, Inc., 2023 U.S. Dist. LEXIS 148973, *14, 2023 WL 5391413

Here, Plaintiff asserted and provided facts supported by evidence to suggest the following with in their complaint: that first, the existence of a contract, either in writing or implied in law. Second, the Plaintiff provided adequate performance in so far as they did all they could before the funds were unforeseeably frozen and unable to be transferred to the Defendant due to no fault of the Plaintiff. Thirdly, the Defendant breached the contract among the parties in two different way; the Defendant did not remit the entire amount agreed to for the bitcoin and the Defendant as an escrow agent certified under a penalty of perjury that the funds were clean, clear and of non-criminal origin, see line 14  of Exhibit A and the last sections of Exhibits D and E..   Lastly,

Plaintiff is validly seeking damages for Defendant's failure to remit the remaining funds agreed to. Compensation is also appropriate for an amount the Court deems just and reasonable for the Plaintiff's account being frozen and for the amount that the Court deems fit for deprivation of Dunk Capital's business line of credit caused by Defendant's breach of contract left them owing approximately ten million dollars ($10,000,000 USD) to third party distributors of bitcoin. Therefore, the Plaintiff's respectfully request that this Court deny the defendant's motion to dismiss.

### STATUE OF FRAUDS

"Under New York Law, the Statute of Frauds requires that certain contracts be in writing: a written agreement or other written instrument which contains a provision to the effect that it cannot be changed orally, cannot be changed by an executory agreement unless such executory agreement is in writing and signed by the party against whom enforcement of the change is sought or by his agent. N.Y. Gen. Oblig. Law § 15-301(1) (2004). The Statute of Frauds renders unenforceable oral modifications to written agreements which contain a clause barring such oral modifications. Where a written agreement includes a prohibition on oral modifications, if no exception to the Statute of Frauds applies, any alleged oral modification to the written contract is barred." Blue Ridge Invs., LLC v. Anderson-Tully Co., 2005 U.S. Dist. LEXIS 244, *1, 2005 WL 44382. Here, Defendant asserts  the party's agreement violates the statue of frauds is simply incorrect. There were multiple written agreements among the parties; Defendant wrote these agreements and both parties expressly agreed, thus it does not violate the statue of frauds.

## **CONCLUSION**

For the foregoing reasons Plaintiff's respectfully request the Court deny the Defendant's motion to dismiss entirely or partially any portion that the Court deems appropriate, and Defendant should be mandated to answer the complaint previously filed.

West Islip NY
January 9, 2024

Respectfully submitted,

David Grossman Esq.
Attorney for Plaintiffs