UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
CIVIL DIVISION

-----------------------------------------------------

DAVID GROSSMAN & ASSOCIATES PLLC,
and DANK CAPITAL SAPI DE CV.

                Plaintiffs,

    -v-

KERNAN AND ASSOCIATES LAW GROUP,

                Defendant.

-----------------------------------------------------

AFFIDAVIT IN OPPOSITION

2:23-cv-08231-NJC-LGD

Eduardo F. Ojeda as MANAGER / CIO of DANK CAPITAL SAPI DE CV., being duly sworn deposes and says the following under the penalties of Perjury:

1. This Affidavit is respectfully submitted in opposition to Defendant's 12(b)(6) pre-answer motion to dismiss. The motion should be denied for the reasons detailed in the accompanying Memorandum of Law which establishes material questions of law and fact exist rendering dismissal inappropriate in this case.
2. Defendant argues confusingly there are no agreements between the parties. This is untrue. As detailed below, and in the other attachments, there were multiple written agreements entered into between the parties which support denying Defendant's motion. In fact all the Contracts ironically which Defendant challenges were drafted by Defendant. We had been in discussions with Defendant for some time along with another attorney from Spain who was working with Defendant, Henry Caballero.
3. Defendant prepared an informative illustration summarizing the agreement and proposed plan of the parties and confirmed the deal procedure and the fact the purchase would be for an initial 250 bitcoins, which approximates ten million USD:





Friday, November 9, 2023
1. Test for: $11.23 or else requested from client.
2. Buyer will provide full KYC, AML and CIS directly to PK before the transfer for approval.
3. Buyer to transfer funds into PK Escrow Account within 48hrs after A2B test.
4. After clearance of the escrow funds, PK and DG move to signing a Joint Escrow Agreement.
5. Funds moves to DG, and DG confirms to EO.
6. EO deliver BTC to PK.
7. PK and DG execute the SWAP.
8. Edu to send fees and discount to PK for distribution.

4. Defendant was very organized and really wanted to make sure the agreement was clear for everyone. Defendant then sent it over in excel with a reconfirmation referencing the planned escrow agreement with the linked wallets and full details:



5. Had things gone proper the larger plan was also agreed to and confirmed again by Defendant in writing:



| Wallet Balance | Test Type | Buyer code | Country | Satoshi Receiving Wallet | PAYMENT | AMOUNT | Payment Form |
|---|---|---|---|---|---|---|---|
| ₿ 5,000 | direct | SWISS1 | SWISS | | DIRECT TO SELLER | $ 150,000,000.00 | FIAT |
| | A to B | GERMAN1 | DE | | Payment via Escrow | $ 150,000,000.00 | FIAT |
| | A to B | PANAM1 | PA | | Payment via Escrow | $ 70,000,000.00 | USDT |
| | A to B | LELEY1 | US | | Payment via Escrow | $ 150,000,000.00 | FIAT |
| ₿ 250 | Direct | LISA1 | US | | DIRECT TO SELLER | $ 7,800,000.00 | |
| FOR EXECUTING THIS PLAN, WE NEED 2 SATOSHIS | | | | | DIRECT PAYMENTS | $ 157,800,000.00 | |
| | | | | | FUNDS IN ESCROW | $ 370,000,000.00 | |

6. We agreed and planned to flow seamlessly into these successive tranches, but obviously that will not be happening.

### ___CONTRACT ONE (Exhibit A)___

7. After sorting out all details which Defendant captured in a written Agreement, drafted exclusively by Defendant, it was then circulated by docusign by Defendant. A copy of ___CONTRACT ONE___ is attached at Exhibit A. This is a crucial Exhibit as it details and corroborates Plaintiffs' claims. Some of the key issues in this agreement worth highlighting are:
    a. WHO IS THE BUYER?
        i. This agreement states the buyer is "Mohammad Akram of GOH Asia Pte" at page 5 and we were given a full informational package for KYC and AML for this same buyer. Exhibit B.
        ii. The problem is the information provided was completely inconsistent with what Defendant tells this Court at paragraph 5 of the pending motion. The plaintiffs were told the buyer was GOH Asia Pte and we relied upon these representations when conducting due diligence in this transaction.
        iii. Defendant writes something very different in Court - stating "I first became involved in the transaction at issue when I signed an escrow agreement with a buyer, Mr. Saman Pazooki of Zodick Trading Solutions LLC, a company based in Sterling, Virginia, so that buyer could purchase bitcoin. The buyer was introduced to me several months before and I met with him in person in Washington, DC. He discussed that he had funds from other commodity transactions such as jet fuel and investor funds that he wanted to use for cryptocurrency transactions. I received Know Your Client ("KYC") Information on the buyer for verification."
        iv. Defendant never disclosed this buyer to us, never gave KYC and AML for Saman Pazooki and had us sign an agreement and gave us documents for someone else. We never heard this name until after the funds were frozen and even then it was in passing.



- v. Someone paid almost 7 million USD for bitcoin – that is the only thing we know for sure.
- vi. For this reason it is our position Defendant is 'the buyer.' Defendant sent the funds. Defendant supplied the information. Defendant is the only entity with the ultimate knowledge and responsibility. Perhaps most importantly Defendant prepared and executed the agreements. In fact the agreement describes the buyer at one point as an 'investor' – stating proceeds will be distributed amongst the investor, legal consultants, consultants and brokers. Id at 5.

b. SCOPE OF THE TRANSACTION
  i. The agreement Defendant circulated which all parties executed confirms the transaction was to total 250 bitcoins.
  ii. The agreement required seller confirm this fact and obligate itself to supply the same.
  iii. The clause states: **By this letter we confirm that we are ready, willing and able to deliver the total quantity of ₿ 250 Bitcoins from our Bitcoin provider.** Id **(emphasis added).** Considering this, we made a firm and binding commitment with our supplier to procure the specified quantity of Bitcoin (BTC) and are now heavily in debt and liable for this commitment.
  iv. Further, pursuant to paragraph 31 the full amount of the gross purchase was due and expected and not in installments.
  v. The first step of the purchase or first tranche was supposed to be $6,724,000. Id. At 6. This is in the contract prepared by Defendant and signed by all parties. The purchases would continue until the 250 bitcoins transferred in a few steps as confirmed by the parties here in the document prepared by Defendant:

8. Once the first contract was fully executed a proof of funds in the form of a screen shot of Defendants IOLTA account was provided to us to confirm Defendant was holding sufficient funds to pay for the first contemplated tranche. See Exhibit C.
9. At this point we were expecting Defendant to send over the money detailed in the Contract, about $7 million, to purchase about 200 Bitcoin for the first tranche. The contract prohibited anything less.

***CONTRACT TWO (Exhibit D)***

10. The successive contracts are more riders or amendments than new contracts. Arguably each stand independent so each will be addressed independently here. The situation was fluid in reality rather than there being multiple transactions.
11. Instead of sending the full amount as planned Defendant sent about 1/3 for some unknown reason. Specifically on Friday October 27, 2023 without saying anything Defendant at the teller hand deposited the seemingly random number of $2,218,920 into my escrow:



[Bank of America Client Receipt image showing a deposit record]

12. Defendant circulated a letter with a new wallet address to receive the bitcoin. There are not many changes but there are some important details in this document. This letter agreement unilaterally drafted by Defendant to meet Defendant's own purpose and to satisfy its unilateral amendments is **_CONTRACT TWO_**. It is also a rider to contract one but it is at the same time an agreement on its own.
13. **CONTRACT TWO** *is annexed at Exhibit D and the key issues for our purposes here include:*
    a. This document confirms performance of payment related to a specific transaction and pursuant to and as part of a contemplated procedure. This is very important in light of the fact Defendant argues we do not have sufficient proof of the existence of a written contract. It was clearly agreed Defendant committed to purchase an initial 250 coins and then again and again as demonstrated in the written and signed agreements.
    b. Further Defendant certified and affirmed the funds were free, clear, clean and of non-criminal origin. This is important as we relied upon the due diligence, expertise and representation of Defendant. What research was done before issuing that certification?
    c. This contract TWO confirms the first round will purchase 250 bitcoin.
    d. This agreement importantly confirms the next payment amount will be
    e. The following tranche was promised to be for $6,205.080.00. As will be explained below yet again this does not happen for some unknown reason.
    f. **Based upon the fractional payment of $2,218,920** an equivalent amount of Bitcoin was immediately delivered to the designated wallet completing the first round without a problem:





CONTRACT THREE (Exhibit E)

14. Yet again Defendant modified unilaterally the amount and decided to send something less. This time they sent $4.5 million along with CONTRACT number 3
15. Defendant had just promised in CONTRACT TWO to send $6,205.080.00 and inexplicably and unilaterally again lowered it by 1/3. Again Defendant prepared its own agreement and sent it around via docusign.
16. What is very important here is we have a third contract on Defendant letterhead prepared and circulated by Defendant confirming the agreement of the parties with transmission of funds. It is very confusing how Defendant can argue there was never an agreement in this matter.
17. The Third Contract was similar but did not proceed as smoothly as the second. Although it seemed funds could move at first it became clear they could not. At this point our attorney had only $4.5 million USD in the escrow.
18. Bank of America would not let the $4.5 million leave the escrow so the transaction stopped and Defendant never made payment for the bitcoin which Defendant obligated us to secure for them. Defendant in writing obligated us to secure in excess of ten million dollars of bitcoin and promised to buy the coins with good clean funds and Defendant broke the promises. It is not our fault the Defendant did not send enough



money and the money sent cannot be moved for some unknown reason. Every time our attorney tried to move the funds the bank said the amount was too high:



19. This went on for a day or two and at one point a banker bank suggested to try a lower amount of $500,000 and it seemed to work. The bank reversed the $500,000 and took it back and put a 'hold pending' on the entire account which remains in effect. As such the account balance shows zero available.
20. Funds were paid from Defendant as the buyer's attorney in Washington DC. Funds were represented as coming comfortably from well-seasoned accounts escrow to escrow, Bank of America to Bank of America, then to be delivered to Seller in several tranches. At each step I was provided clear written instructions.
21. Bank of America would not the funds move after the first round Eventually we found out why or at least we think we may know why. We have no official reason for the funds being on 'hold pending'. Plaintiffs have no official notice from the Bank or anyone else explaining why the funds are being held.
22. The contracts have been breached by Defendant. The true identity of the buyer was concealed. The quality of the purchase funds were misrepresented detrimentally. Plaintiffs relied upon the promises and representations and agreements with Defendant and secured the requested minimum 250 bitcoins only to Defendant fail to purchase them. The dishonesty about the money, the buyer and the ability to buy breached the agreements which ironically defendant drafted and as a resulted Plaintiffs have been damaged.



WHEREFORE Defendant's motion should be denied together such other relief the Court deems just and proper.

January 9, 2024

Eduardo E. Ojeda
MANAGER / CIO
DANK CAPITAL SAPI DE CV

Sworn to before me
This 9 day of January 2024

Notary Public

DENNIS KELLY
Notary Public - State of New York
No. 02KE6218306
Qualified in Suffolk County
My Comm. Expires Mar. 1, 2026