IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAVID GROSSMAN & ASSOCIATES PLLC, AND <br> DANK CAPITAL SAPI DE CV. <br><br> *Plaintiffs* <br><br> v. <br><br> KERNAN AND ASSOCIATES LAW GROUP <br><br> Defendant | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Civil Case Number: 23-CV-08231-NJC-LGD <br> ) <br> )   REPLY MEMORANDUM OF LAW <br> )   IN SUPPORT OF <br> )   MOTION TO DISMISS <br> ) <br> ) |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S MOTION TO DISMISS**

1

# **INTRODUCTION**

Defendant, Kernan and Associates Law Group, ("KALG") submits this reply memorandum of law in support of its motion for an Order, pursuant to Fed. R. Civ. P. 12(b)(6), dismissing Plaintiffs' complaint (the "Complaint") in its entirety. Moreover, the Complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(7) which authorizes dismissal of a pleading for failure to join a party under Rule 19 of the Federal Rules of Civil Procedure. As more fully stated below and in the original motion to dismiss, the entire Complaint should be dismissed.

In their reply, Plaintiffs concede, and offer no argument to the contrary, that if a contract existed between the Parties, performance of the contract was illegal, impossible, or commercially impractical. In fact, Plaintiffs also argue that their performance was excused due to impossibility when their bank account was frozen by Bank of America. Plaintiffs also concede, and offer no argument, that they failed to join the necessary Parties to this action. Defendant argued in its initial motion that Plaintiffs failed to join the necessary parties to this action. Accordingly, the Complaint should be dismissed for this reason.

Plaintiffs continue to allege that Plaintiffs and Defendant entered into a contract for the purchase of bitcoin whereby Defendant was the buyer of the bitcoin. Plaintiffs failed to plead the elements necessary to establish such a Contract. Plaintiffs argue that there were "multiple contracts" between the Parties that made the escrow attorney the buyer of bitcoin. There was no Contract, however, for the purchase of bitcoin between Defendants and Plaintiff. The Contract between the Parties was a joint escrow agreement. That agreement stipulated that Defendant was the escrow agent holding funds to support the Buyer's purchase of bitcoin. This joint escrow agreement in no way states that Defendant, the escrow attorney, was the buyer of bitcoin. The parole evidence rule and statute of frauds prevent their being another contract between Plaintiffs

2

and Defendant for the purchase of bitcoin from the spreadsheet snippets and other notes provided by Plaintiffs that are unclear and have no reference to Defendant as a buyer whatsoever.

Plaintiffs allege Defendant argued in its motion that there was no contract between the Parties. This is incorrect and not the case. Defendant established that there was an agreement between the Parties but it was a joint escrow agreement, not an agreement to purchase any quantity of bitcoin. All the other documents and spreadsheet snippets Plaintiffs use to try and create another contract, were procedural documents to confirm the process such as the movement of money and cryptocurrency wallet addresses. These other documents in no way modify Defendant's role as escrow attorney in the transaction. In fact, they confirm that role by stating that Defendant is the escrow attorney. Moreover, these other documents do not state the terms of the alleged contract Plaintiffs are trying to create with Defendant that would establish a valid contract to purchase bitcoin.

No interpretation of the Plaintiffs' proof would lead a reasonable trier of fact to conclude that an agreement to buy bitcoin existed between the Plaintiffs and the escrow law firm Kernan and Associates Law Group. Indeed, there was clearly no such meeting of the minds.

## **ARGUMENT**

Plaintiffs concede, and offer no argument to the contrary, that if a contract existed between the Parties to purchase bitcoin, performance of the contract was illegal, impossible, or commercially impractical. In fact, Plaintiffs also argue that its performance was excused due to impracticability and impossibility when its bank account was frozen by Bank of America. *(Plaintiffs' Memorandum of Law, page 5)*

Generally, in the absence of a contrary provision, if the act to be performed is necessarily dependent on the continued existence of a specific thing, the destruction thereof before the time for performance, without the fault of the promisor, will excuse the nonperformance of the

3

contract. Thus, a contract to sell a particular thing, such as a crop from a specific farm or place, is excused if the thing is destroyed before performance becomes possible. *Holly Hill Fruit Products Co., Inc. v. Bob Staton, Inc.*, 275 So. 2d 583 (Fla. Dist. Ct. App. 2d Dist. 1973).

Plaintiffs also concede, and offer no argument, that they failed to join the necessary Parties to this action. Defendant argued in its brief in Point VII that Plaintiffs failed to join the necessary parties to this action. Accordingly, the Complaint should be dismissed. Plaintiffs failed to join the United States to this action. Plaintiffs admit the United States Secret Service is attempting to return the funds to the owner of the funds that was defrauded by the phishing scheme, yet Plaintiffs never served or joined the United States to this action, so that it could assert its interests in the funds.

Moreover, Plaintiffs failed to join the buyer Plaintiffs say was identified to purchase the bitcoin directly with Plaintiffs. Plaintiffs admit a company named Mohammad Akram of GOH Asia Pte entered into a contract to purchase bitcoin with Dank Capital. *(Plaintiffs' Exhibit 2, p.3)* Yet, for some inexplicable reason, Plaintiffs bring no action against this entity but instead bring an action against the escrow agent to this action and attempt to make the escrow agent the buyer.[1] The buyer that entered into the contract with Dank Capital is a necessary Party to this action and failure to join that Party to this action results in this action being fatally defective. Moreover, Plaintiffs acknowledge that Mr. Henry Caballaro was an intermediary talking directly to Plaintiffs about this transaction, *(Plaintiffs' Exhibit, Eduardo Ojeda Affidavit, page 1)* yet Mr. Caballaro was not joined as a party to this action.[2]

---

[1] Plaintiffs state that Mohammad Akram of GOH Asia Pte was not the real buyer in this matter but it is common in commodity transactions for a proxy company to contract to purchase a commodity and to flip the purchase contract for a profit. It would not be unusual to see a different buyer name signing the contract with a seller than the actual end buyer. In fact, as admitted in their own affidavits, Plaintiffs were not the real end seller in this transaction either. Plaintiffs apparently were acquiring bitcoin from the true seller and were flipping it to the buyer for a profit. Plaintiffs themselves failed to disclose the real supplier of the bitcoin anywhere during the transaction and even including all the documents filed in this action, including their affidavits and Memorandum of Law. The real seller of the bitcoin is merely identified as "the provider of bitcoin." *(Plaintiffs' Exhibit 2, p.4)*

[2] One can assume that Plaintiffs are trying to create a claim against Defendant in order to assert a cause of

4

Federal Rule of Civil Procedure 12(b)(7) "authorizes dismissal of a pleading for failure to join a party under Rule 19 [of the Federal Rules of Civil Procedure]." *Nw. Consultants, Inc. v. Bloom*, No. 10 CV 5087, 2012 WL 1941878, at *6 (E.D.N.Y. May 22, 2012). Therefore, "[b]efore dismissing a complaint under Rule 12(b)(7), a district court must determine whether a missing party is necessary within the meaning of Fed. R. Civ. P. 19." *City of New York v. Milhelm Attea & Bros.*, 550 F.Supp.2d 332, 352 (E.D.N.Y. 2008) (*quoting Johnson v. Smithsonian Inst.*, 189 F.3d 180, 188 (2d Cir. 1999).

The rule governing required joinder of parties sets forth a two-step test for determining whether the court must dismiss an action for failure to join an indispensable party: a court must first determine whether an absent party belongs in the lawsuit, and once the court makes a threshold determination that a party is necessary, it must determine whether joinder of the absent party is feasible for jurisdictional or other reasons; if the court determines that a party is indispensable, then the court must dismiss the action pursuant to the rule requiring the court to determine whether, in equity and good conscience, the action should proceed among the existing parties. *Viacom Int'l., Inc. v. Kearney*, 212 F.3d 721, 724 (2d Cir.2000); *Fed.Rules Civ. Proc. Rule 19*. If resolving plaintiff's claim will require the court to define a non-party's rights under a contract, it is likely that the non-party is necessary under Rule 19(a). Specifically with respect to an escrow attorney, **the escrow attorney is not the real party in interest** and the contracting Parties must be joined to the action. (Emphasis Added) *Berkeley Acquisitions, LLC v. Mallow, Konstam & Hager, P.C.*, 262 F.R.D. 269 (S.D.N.Y. 2009) (Purchaser of property and assignee of purchaser's rights in the property were necessary parties in vendor's action against escrow agent seeking to recover funds held in escrow in connection with the sale; escrow agent was not a real

---

action in the United States to prevent the United States Secret Service from seizing the stolen funds and returning them to their owner rather than asserting a claim against the proper parties in a foreign jurisdiction. Although not relevant or necessary to determine for this motion, Defendant denies he ever talked with Grossman or Ojeda about this transaction and did not draft any of the documents as stated by Plaintiffs other than the initial banking coordinates in the "Wallet Identification" document.

party in interest that had a stake in vindicating alleged rights of purchaser and assignee, and resolution of vendor's claims would require court to determine rights and obligations of vendor, purchaser, and assignee under the original contract of sale). *See also Jonesfilm v. Lion Gate Intern.*, 299 F.3d 134, 141 (2d Cir. 2002) (*citing Peregrine Myanmar Ltd.*, 89 F.3d at 48 ("The key issue in deciding whether either part of Rule 19(a) applies is the extent to which this case requires a determination of rights and interests under [the contract to which the absent entity is a party].") *See also Ryan v. Volpone Stamp Co., Inc.*, 107 F.Supp.2d 369, 387 (S.D.N.Y.2000), where the court noted, "It is well-established that a party to a contract which is the subject of the litigation is considered a necessary party." *See also Crouse–Hinds Co. v. InterNorth, Inc.*, 634 F.2d 690, 701 (2d Cir.1980) ("No procedural principle is more deeply imbedded in the common law than that, in an action to set aside a lease or a contract, all parties who may be affected by the determination of the action are indispensable.").

Plaintiffs' Complaint seeks to impose liability on Defendant for breach of a contract to purchase bitcoin. Plaintiffs argue that there were "multiple contracts" between the Parties that made the escrow attorney the buyer of bitcoin. *(Plaintiff Exhibit 2, p.1)*. There was no Contract, however, for the purchase of bitcoin between Defendants and Plaintiff.

As this Court stated in its decision on the TRO:

> "Under New York law, a breach of contract claim requires (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of the contract by the defendant, and (4) damages." *Sackin v. TransPerfect Glob., Inc.*, 278 F. Supp. 3d 739, 750 (S.D.N.Y. 2017) (*quoting Balk v. N.Y. Inst. of Tech.*, 683 F. App'x. 89, 95 (2d Cir. 2017)); *see also 34-06 73, LLC v. Seneca Ins. Co.*, 39 N.Y.3d 44, 52 (2022) (laying out the elements of a breach of contract claim under New York law). The first element of the claim requires "plead[ing] the provisions of the contract" at issue. *James v. Countrywide Fin. Corp.*, 849 F. Supp. 2d 296, 322 (E.D.N.Y. 2012). While Plaintiffs are not required to attach a copy of the contract or quote the contract provisions verbatim, the Amended Complaint must "set forth the terms of the agreement upon which liability is predicated by express reference." *Id*. (citation and internal quotation marks omitted). As a threshold matter, neither the Amended Complaint nor any of Plaintiffs' submissions in support of the TRO Motion include any written agreement between either of the Plaintiffs in this

> case—Dank Capital and Grossman & Associates—and the sole Defendant, Kernan & Associates. Nor do they attach any written agreement between Dank Capital and "Sam," the individual whom Plaintiffs allege is the actual buyer in the event that Defendant was acting on behalf of another entity rather than purchasing bitcoin for itself. Am. Compl. ¶¶ 13–14. Instead, the Amended Complaint and the Ojeda Affidavit include screenshots of Microsoft Excel worksheets, which Plaintiffs contend summarize the terms of the purported agreement by Kernan & Associates or "Sam" to purchase 250 bitcoin from Dank Capital. See Am. Compl. ¶¶ 15, 21, 28; Ojeda Aff. ¶ 6. None of these images, however, identify the terms of such an agreement, which would necessarily address material issues such as: (1) the identity of the buyer, (2) the identity of the seller, (3) how much bitcoin was to be purchased, (4) the total purchase price, (5) when payments would be made, (6) how payments would be made, (7) when bitcoin would be delivered, or (8) how bitcoin would be delivered. Moreover, while Plaintiffs allege that one of these Microsoft Excel charts constituted Kernan & Associates' "purchase plan," whereby it "made commitments to Dank to purchase the whole sum" and as such became the "buyer," Am. Compl. ¶¶ 15, 21, the chart does not make any of those representations. Based on a close reading of the record at this stage of the proceedings, Plaintiffs have not raised a serious question about whether there was an agreement for Dank Capital to sell 250 bitcoin to Kernan & Associates or anyone else, or that Kernan & Associates breached any specific terms of such an agreement. Plaintiffs thus fail to show they are likely to succeed on the merits of their breach of contract claim or that they have raised a serious question on the merits of this claim.

*Memorandum and Order, Plaintiffs' Motion for a Temporary Restraining Order, Ordered by Judge Nusrat J. Choudhury (January 2, 2024).*

Plaintiffs create a strawman argument stating Defendant argued that there was no contract between the Parties. This is incorrect and not the case. Defendant established that there was an agreement between the Parties but it was a joint escrow agreement, not an agreement to purchase any quantity of bitcoin. For the first time in its reply to the motion to dismiss, Plaintiffs attach a version of the joint escrow agreement. Plaintiffs did not attach or reference the joint escrow agreement in its Amended Complaint. This is the only Agreement between the Parties. All the other documents Plaintiffs use to create another contract, were procedural documents to confirm the process such as the movement of money and cryptocurrency wallet addresses.  These other documents in no way modify Defendants role as escrow attorney in the transaction. In fact, they confirm that role by stating that Defendant is the escrow attorney. *(Plaintiffs' Exhibit 3, p.1 and 5; Exhibit 6, p.1 [satoshi received in accordance with the joint escrow agreement and references*

7

*to escrow wallets]; Exhibit 7 [references to escrow wallet throughout])*

Moreover, as held in this Court's decision on the TRO, these other documents do not state the fundamental terms of the alleged contract Plaintiffs allege was created with Defendant. "None of these images, however, identify the terms of such an agreement, which would necessarily address material issues such as: (1) the identity of the buyer, (2) the identity of the seller, (3) how much bitcoin was to be purchased, (4) the total purchase price, (5) when payments would be made, (6) how payments would be made, (7) when bitcoin would be delivered, or (8) how bitcoin would be delivered." *(Memorandum and Order, Plaintiffs' Motion for a Temporary Restraining Order, Ordered by Judge Nusrat J. Choudhury (January 2, 2024)).*

Plaintiffs again refer to new spreadsheets and illustrations that were provided by "Defendant." But, not only do these documents not constitute a contract just like the previous screenshots and spreadsheets, but contrary to Plaintiffs contentions Defendant has never seen these documents let alone drafted them as represented by Defendant. Moreover, Defendant had no communication with Plaintiffs verbal or in writing other than signing the joint escrow agreement and the "Wallet Identification Document." *(Patrick Kernan, Declaration in Support of Motion to Dismiss, p.2 and 3)*

Plaintiffs seem to make an argument that there was some sort of breach by the size of the funds transfer made by Defendant. Page 2 of the Grossman affidavit shows the fund tranches that were sent. But Plaintiffs argue that the entire amount of the funds needed to be transferred at one time. *(Grossman declaration p.2, paragraph 10)* In paragraph 17, Plaintiffs state for some **inexplicable reason** $2,218,920 was sent to Grossman by Defendant. *(Emphasis Added).* Yet in paragraph 10 of Plaintiffs' reply, the spreadsheet Plaintiffs attached showing the procedures, it specifically states the tranche schedule and reflects the exact $2,218,920 that was "inexplicably sent" as the first tranche and Defendant would execute as the escrow attorney on behalf of the Parties. Moreover, Plaintiffs' own exhibit, Exhibit 7, the Wallet Identification document, shows

8

the exact funds transfers that were made, $2,218,920.00 and $4,437,840.00. *(Plaintiffs' Exhibit 7, p.1, lines 6-7)*

Although never citing or attaching the joint escrow agreement to its Complaint, which prevents Plaintiffs from making these arguments, Plaintiffs allege breach of the escrow agreement by not disclosing the buyer and not providing clean funds. With respect to the buyer, Defendant was never asked to disclose the buyer or KYC or AML by Plaintiffs. Defendant was the escrow attorney. In fact, Defendant had no communication whatsoever with Plaintiffs about the identity of the buyer. Defendant did not provide any documents related to the Buyer. Defendant signed the contract drafted by the Parties committing to serve as the escrow agent as stated in the contract itself. Again, as stated above, it is common for proxy parties to be involved in the transaction in order to make a profit by flipping the commodity. It would not be unusual to see a different buyer name signing the contract with a seller. In fact, as admitted in their own affidavits, Plaintiffs were not the real end seller in this transaction either. Plaintiffs apparently were acquiring bitcoin from the true seller and were flipping it to the buyer for a profit. Plaintiffs themselves failed to disclose the real supplier of the bitcoin anywhere during the transaction, and in the contract documents, and even including all the documents filed in this action, including their affidavits and Memorandum of Law. The real seller of the bitcoin is merely identified as "the provider of bitcoin." *(Plaintiffs' Exhibit 2, p.4)*

With respect to the allegation about providing clean funds, Plaintiffs do not allege and cannot state Defendant had any reason to believe the funds being used in the transaction were not clean funds. Moreover, Plaintiffs do not state at any point what Defendant failed to do to ensure that funds were clean and clear. To Defendant's knowledge the funds were clean and clear. The funds were transferred from a well know and reliable European bank, HSBC, to one of the top United States domestic banks, Bank of America. The funds were in Defendant's possession for eight days without anyone indicating that there was a problem with the funds being stolen in a

9

phishing scheme. Defendant met in person with the provider of the funds before the transaction began.

For the first time in its response to the motion to dismiss, Plaintiffs allege that in the absence of a written agreement a "quasi contract" or "oral" contract was created between the Parties. *(Plaintiff Memorandum of Law, page 3 and 4)* Unfortunately, again, a quasi contract was not alleged in Plaintiffs' amended complaint. Therefore, Plaintiffs' response with respect to a quasi contract must be summarily dismissed. Moreover, even if Plaintiffs had alleged there was a quasi contract, a quasi contract cannot be created when there is already a written agreement between the Parties. In New York: "The theory of unjust enrichment lies as a quasi-contract claim. It is an obligation the law creates in the absence of any agreement." *Beth Israel Medical Center v. Horizon Blue Cross and Blue Shield of New Jersey, Inc*., 448 F.3d 573 (2d Cir. 2006) *citing Goldman v. Metropolitan Life Ins. Co.*, 5 N.Y.3d 561, 572, 807 N.Y.S.2d 583, 841 N.E.2d 742 (N.Y.2005) (citations omitted; emphasis added). The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter. A "quasi contract" only applies in the absence of an express agreement, and is not really a contract at all, but rather a legal obligation imposed in order to prevent a party's unjust enrichment. A quasi-contractual obligation is one imposed by law where there has been no agreement or expression of assent, by word or act, on the part of either party involved. *Id*. As there was the joint escrow agreement between the parties, the quasi contract theory of recovery is not applicable in this matter.

With respect to the oral contract theory, as stated in Defendants initial motion to dismiss, an oral contract is precluded by the statute of frauds and the parol evidence rule. New York's statute of frauds, codified in General Obligations Law §§ 5-701 through 5-705, requires a signed writing for certain types of agreements. N.Y. GEN. OBLIG. LAW §§ 5-701(a)(1), 5-701(10), 5-703(1) (McKinney 2012). New York General Obligations Law § 5-701, requires a contract

10

involving the sale of goods for $500 or more to be in writing. To satisfy the statute of frauds, these types of contracts must be reduced to a writing that identifies the parties, describes the subject matter, states all the essential terms of the agreement, and is signed by the party to be charged. *Urgo v. Patel*, 297 A.D.2d 376, 377, 746 N.Y.S.2d 733, 735 (2d Dep't 2002) (*citing 160 Chambers St. Realty Corp. v. Register of N.Y.C.*, 226 A.D.2d 606, 606–07, 641 N.Y.S.2d 351, 352 (2d Dep't 1996). Moreover, the parol evidence rule, precludes a party from introducing extrinsic evidence to add to or vary a complete written contract.

## CONCLUSION

For the reasons set above in the motion to dismiss, Plaintiffs Complaint should be dismissed in its entirety for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and for failure to join a necessary party. Moreover, the Complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(7) which authorizes dismissal of a pleading for failure to join a party under Rule 19 of the Federal Rules of Civil Procedure.

No interpretation of the Plaintiffs' proof would lead a reasonable trier of fact to conclude that an agreement to buy bitcoin existed between the Plaintiffs and the escrow law firm Kernan and Associates Law Group. Indeed, there was clearly no such meeting of the minds.

Dated: January 22, 2024                    Respectfully submitted,

*/s/ Patrick B. Kernan*
_____
Patrick B. Kernan, Esq.
Kernan and Associates Law Group, PLLC
1629 K Street NW, Suite 300
Washington, DC 20006
Email: pkernan@kernanandassociateslawgroup.com
Phone cell: (703) 867-2973

## CERTIFICATE OF SERVICE

I hereby certify that the following has been served on January 22, 2024 with the foregoing paper via PACER ECF and e-mail:

/s/  Patrick B. Kernan